RADTKE, Appellant, vs. ROTHSCHILD WATER POWER COMPANY, Respondent.

*September 15—October 6, 1914.*

*Deeds: Description: Bluff as boundary: Right to flow water against face of bluff: Intention of parties: Parol evidence affecting writings.*

1. A grant of "all the low lands south and west of the bluff" which existed on the land owned by the grantor, did not convey title in fee to any of the land composing the bluff or on which it rests.
2. Construing such grant, however, in the light of all the circumstances showing the intent of the parties, it is *held* that it con-

veyed the fee of the low lands and the right to flow them by means of a dam which was to be built by the grantee, and also, as necessarily incident thereto, the right to flow the water against the face and sides of the bluff.

3. Parol evidence of the facts and circumstances surrounding the execution of a deed, if they do not contradict, vary, or modify it, may be received to aid in determining what the writing was intended to express.

4. In ascertaining the intent of the parties as to a descriptive part of a deed, all the parts of the instrument and the locality and subject matter to which it applies may be taken into consideration.

5. Parol evidence to enable the court to say what the parties to a written contract intended to express by the language adopted in making it, is admissible.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

This is an action to recover damages for the perpetual use of lands which the appellant alleges he owns and that they were taken by the respondent by overflow of water of the Wisconsin river by means of a dam constructed by respondent below appellant's lands, and for damages to appellant's lands not overflowed but injured by this action of the respondent.

The plaintiff, *Radtke,* was the owner of lots 1, 2, and 3 and the south half of the northwest quarter and one and one-half acres of the southwest quarter of the southeast quarter of section 12, and lot 2 in section 13, in township 28, range 7 east. Before the construction of the alleged dam and the execution of any deed the plaintiff owned the land up to the river. The high land upon which he lived was separated from the low land and the river on the south and west by a high bluff some 270 rods in length. After some negotiations the appellant executed a deed to respondent's grantors in which the land was described as follows:

"Lot 3 in section 12, and lot 2 in section 13; also all of the low lands south and west of the bluff in lots 1 and 2, the south half of the northwest quarter and one and one-half

acres in the southwest quarter of the southeast quarter of section 12, township 28 north, range 7 east, containing about 100 acres more or less according to the government survey."

There was a second deed of the land located in the southwest quarter of the southeast quarter containing the words:

"The land owned by the grantors in the southwest quarter of the southeast quarter of section 12, township 28 north, range 7 east which shall be subject to overflow by means of a dam constructed or maintained at or near Rothschild rapids on the Wisconsin river, in Marathon county; said land so subject to overflow is supposed to be about one and one-half acres. This deed is made to correct an error in description in a certain deed made by the grantors herein to the grantee."

The deed referred to is the one above mentioned.

The appellant asserts that the boundary line between his land and the land conveyed to the respondent's grantors is the base of the bluff, while the respondent contends that it is a line midway between the base of the bluff and the top. The court below submitted to the jury by special verdict only the questions of whether or not damage had occurred or would occur to appellant's lands above the middle line of the bluff, and the amount thereof, and the amount of damage, if any, the appellant had suffered if his line was at the base of the bluff. The jury found that no damage would result to the appellant if the middle line of the bluff constituted the boundary, and if the base line of the bluff constituted the boundary that he had suffered damage to the extent of $400.

Appellant moved for judgment on the verdict in his favor for $400, and in the alternative for a new trial if judgment was denied him. Both motions were denied. Respondent's motion for judgment on the verdict adjudging the boundary line to be as claimed by it and dismissing the action, and for costs, was granted, and judgment was duly entered thereon, to which the appellant duly excepted.

The court received and considered evidence of conversa-

tions between ·the appellant and respondent's grantors and the scrivener of the deeds, at the time of the execution of the deeds, and of their understanding of the transaction.    The appellant's objection to this was overruled and he assigns this ruling as error.

For the appellant there was a brief by *Smith & Leicht* and *F. E. Bump,* and oral argument by *Brayton E. Smith.* They contended, *inter alia,* that there was no latent ambiguity in the deeds and that the intention of the parties must be ascertained from the instruments themselves.    *Flood v. Kerwin,* 113 Wis. 673, 89 N. W. 845; *Lego v. Medley,* 79 Wis. 211, 219–221, 48 N. W. 375; *Cole v. Clark,* 3 Pin. 303; 5 Words & Phrases, 4011; 4 Am. & Eng. Ency. of Law (2d ed.) 795.    The words of the grant, "south and west of the bluff," exclude any part of the bluff.    The boundary is the foot of the bluff.    The bluff is a part of the upland, none of which was granted.    4 Am. & Eng. Ency. of Law (2d ed.) 805, and cases in note 1; 6 Words & Phrases, 4913; *Whitmore v. Brown,* 100 Me. 410, 61 Atl. 985; *Haley v. Martin,* 85 Miss. 698, 38 South. 99; *Patapsco G. Co. v. Bowers-While L. Co.* 146 N. C. 187, 59 S. E. 538; *Clayton v. Gilmer County Court,* 58 W. Va. 253, 52 S. E. 103; *Bonney v. Morrill,* 52 Me. 252; *Millett v. Fowle,* 8 Cush. 150; *Carbrey v. Willis,* 7 Allen, 364; *Haight v. Hamor,* 83 Me. 453, 22 Atl. 369; *Dunton v. Parker,* 97 Me. 461, 54 Atl. 1115; *Storer v. Freeman,* 6 Mass. 435; *Stillman v. Burfeind,* 21 App. Div. 13, 47 N. Y. Supp. 280; *Hanlon v. Hobson,* 24 Colo. 284, 51 Pac. 433, 42 L. R. A. 502, 507–509; *Boston v. Richardson,* 13 Allen, 146, 154, 155; *Newton v. L. & N. R. Co.* 110 Ala. 474, 19 South. 19; *Duffield v. Spence* (Tenn.) 51 S. W. 492; *Bradley v. Rice,* 13 Me. 198; *Eureka M. & S. Co. v. Way,* 11 Nev. 171, 177, cited in 5 Words & Phrases, 4665.

For the respondent there was a brief by *L. A. Pradt* and *M. B. Rosenberry,* and oral argument by *Mr. Pradt.*

SIEBECKER, J. The plaintiff claims that the trial court erred in holding that the grant included a portion of the bluff referred to in the descriptive part of the deed. The court determined that the words of the description "all of the low lands south and west of the bluff" embraced the part of the bluff between the base of the bluff at the margin of the low lands and the middle line of the bluff. The court so held upon the ground that the rule recognized in cases where the descriptive words of the conveyance designating the line of the property granted as "to the road," "along the line of said road," "a line running along the bank of the river," or "bounded by the river," and in cases where the boundary line is designated by an object without reference to the ground upon which it rests, such as "trees," "posts," "stones," "permanent fences," and similar objects, are held to convey the title to the land to the thread of the stream or center of the road, or to the line running through the center of such objects, is applicable to the descriptive part of this deed designating the boundary line as "south and west of the bluff." We are of the opinion that the court erred in this construction of the descriptive part of the grant. The bluff referred to in this description has no analogy to a stream or road in fixing the boundaries to pieces of land, nor does it from its relation to the abutting low lands, its shape, size, and sloping sides, and its marked characteristics, in any way partake of the nature of objects usually designated to fix boundaries in grants of lands regardless of the ground they rest on. It is manifest from the very nature of the physical conditions of such a bluff that the grant was not intended to convey any of the land composing the bluff or on which it rests. The words "all of the low lands south and west of the bluff," in their ordinary significance, when applied to the locality and subject matter of the grant, show an intent that no part of the bluff was to be embraced in the grant, and the deed must be held to convey no fee to the land composing the bluff nor

on which it rests, but that the plaintiff conveyed title in fee to defendant's grantors to all of the low lands adjoining the bluff and embraced in the description set out in the deed.

The plaintiff contends that the court erroneously denied him judgment to recover $400 found by the jury as damages to his lands from flowing the water against the face and the side of the bluff. Fundamental to this demand is the inquiry, What did the parties intend to grant by the conveyance? Parol evidence of the facts and circumstances surrounding the execution of the deed, if they do not contradict, vary, or modify it, may be received to aid in determining what the writing was intended to express. *Lyman v. Babcock,* 40 Wis. 503; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43; *Hammond v. Capital City Mut. F. Ins. Co.* 151 Wis. 62, 138 N. W. 92.

It is well recognized that in ascertaining the intent of the parties as to a descriptive part of a deed, all the parts of the instrument and the locality and subject matter to which it applies may be taken into consideration. As declared in *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661, "Parol evidence to vary the terms of a written contract is one thing; such evidence to enable the court to say what the parties to a contract intended to express by the language adopted in making it, is quite another thing. The former is not permissible. . . . The latter is permissible and is often absolutely essential to show the real nature of the agreement." In the light of this practice the trial court properly received evidence to explain the subject matter of the grant and to interpret the descriptive part of the deed and ascertain the intent of the parties in relation to it. Looking into the situation of the parties, the locality, and the subject matter of the grant as disclosed by the surrounding circumstances, it is manifest that the grant was intended to convey the title in fee to the low lands, as we have heretofore indicated, and that when applied to the physical situation disclosed the grant in-

cludes the right of flowing the low lands and such part of
the side of the bluff as is required for the maintenance of the
defendant's dam near Rothschild rapids in the Wisconsin
river. It is also apparent that the enjoyment of this right
so granted incident to the maintenance of the dam has neces-
sarily caused a raising and setting back of the water in the
river and that this causes a flowing of a part of the sides of
the bluff. Under these circumstances and conditions the de-
fendant has acted within his rights, and no rights of the
plaintiff have been violated by this raising and setting back
of the water, and hence no claim for damages exists in the
plaintiff's favor.

The judgment of the trial court is erroneous in that it is
thereby adjudged that the boundary line between the plaint-
iff's lands and those conveyed by the deed in question is "the
middle line of said bluff."

*By the Court.*—The judgment appealed from is reversed,
and the cause is remanded to the lower court with directions
to enter judgment in accordance with this opinion.

TIMLIN, J. My concurrence in this decision rests upon
the notion that a conveyance of bottom lands adjoining a
bluff and stated to be south and west of such bluff carried
with it to the grantee an easement along the side of the bluff
necessary for the impounding and support of the raised
water, where it is shown that the parties understood that the
grantee purchased the low land for the purpose of flooding
the same and with reference to a contemplated improvement
requiring such flooding.