TAYLOR v. INDIANA & MICHIGAN ELECTRIC CO.

1. WATERS AND WATERCOURSES — DAMS — POWER COMPANIES — RIVERS—FLOODING LANDS—NEGLIGENCE.

In the operation of a power dam in a river of this State the fact that the defendant owner and operator of the dam is a public utility engaged in furnishing electricity to the public, thereby becoming subject to the control of the authorities and subject to different rights and privileges from those acquired by ordinary corporations or persons in business of a similar character, was not sufficient to entitle it to flood the lands of riparian owners below its dam by discharging an unusual flow of water from its mill pond; and it could not be *held*, and the court did not err in refusing to charge the jury, that defendant had the right to discharge sufficient water at any time from the dam in question for the purpose of making necessary repairs, notwithstanding damage or injury to lower riparian proprietors.

2. SAME—RIPARIAN RIGHTS—REASONABLE USE.

Persons or corporations who own or maintain dams acquire only the right to a reasonable use of the water in the stream subject to the rights of owners above and below them and are responsible for damages that accrue to upper or lower riparian owners from negligence in the operation of the dam.

3. SAME—TRIAL—CHARGE.

Upon the trial of an action for negligently flooding the lands of plaintiff and plaintiff's assignors, where the court failed to charge as fully upon the subject of what actually constituted negligence as the defendant desired, it was the duty of the defendant, if not satisfied, to present requests to instruct the jury in accordance with its views, and failing to do so it could not complain of a charge which fairly covered the general rules of negligence.

4. SAME—TRIAL.

The court was not in error in refusing to charge the jury as requested by the defendant that it was the duty of the defendant to keep its waterwheels in repair and in condition to fulfill its contract regardless of the state of the water, and if the wheels became out of repair, so as to threaten their efficiency, and it became necessary to lower the water in the pond it had the right to discharge sufficient to lower it; that if in discharging a large volume of water in its tail race defendant had no intention to injure any person it was not liable; that it was not under obligation to hold the water at a point at or above the crest of the dam, but was absolutely entitled to discharge enough so as to maintain a constant head as demanded by its operations; that if an unusually large volume of water came into the pond and caused a freshet or discharge from their mill pond defendant had the right to allow it to escape so as to maintain a desired height or head; that the defendant was entitled to operate its wheels during high water as well as during low water, and therefore could discharge all such excess through its gates as might interfere with its operations, without incurring any liability.

5. SAME—DAMAGES—DEFINITION.

Although taken by itself the definition of negligence given by the trial court to the jury in its charge that negligence consists in doing or omitting to do something which persons of ordinary prudence and care would not have done or would not have omitted to do under similar circumstances was not correct, when taken in connection with a definition and statement set forth in defendant's request and given by the court, the error is *held* to have been cured so as not to require reversal.

6. SAME—DAMAGES—FLOODING LANDS—VERDICT.

Defendant was not prejudiced by the action of the court

in advising the jury to return a verdict for the separate amounts lost by plaintiff, or plaintiff's assignors, together with the total amount which plaintiff was entitled to recover, unless there was ground for the claim that any amount or certain items were excessive: in the absence of such claim if there was any possible error it was not prejudicial.

7. SAME—TRIAL—SPECIAL INTERROGATORIES—JURY.
  Four special interrogatories presented by defendant to be given to the jury were not improperly refused by the court where the questions were not specific or limited to a definite time and the answers to the questions would not be controlling or conclusive; one question relating to the volume of water *held* properly refused because the volume of water referred to was not made clear, so that the interrogatory was ambiguous, and because interpreted in one possible way it referred to matters not in evidence.

Error to Berrien; Bridgman, J. Submitted October 16, 1912. (Docket No. 105.) Decided March 18, 1915.

Case by Thomas Taylor against the Indiana & Michigan Electric Company for flooding plaintiff's lands. Judgment for plaintiff. Defendant brings error. Affirmed.

*M. L. Howell* (*O. W. Coolidge,* of counsel), for appellant.

*Cady & Andrews,* for appellee.

McALVAY, J. Plaintiff, for himself and as assignee of 23 others, recovered judgment against defendant in an action of trespass on the case for damages for negligently overflowing their lands and injuring and destroying crops growing thereon. Defendant has removed the case to this court by writ of error for review, and asks for a reversal on account of errors committed upon the trial of the case.

Defendant company owns and operates four or more

dams on the St. Joseph river in this State, thereby controlling the water power of said stream for many miles above Berrien Springs. This water power, to the amount of 8,000 horse power, is utilized to generate electricity, which is sold and furnished by defendant to customers in Michigan and Indiana to be used for varied purposes. The power houses located at these dams are connected by trunk lines, so that the power from all of them is united and is available to all customers. The dam of defendant with which this suit is concerned, being the farthest downstream, is located at Berrien Springs. It has a head of 21 feet and a pondage or reservoir of 900 acres. It is constructed with the power house located part way out in the dam, which has on each side of it provision made for two units, each operated by eight 48-inch turbine wheels. Between the power house and the west bank of the river only one unit is installed. On the east side two units are installed. The discharge of water from the units on the east side is about 50 feet in width. It is flanked on the west side by the power house and on the east side by a cement wall which divides the discharge of the wheels from the discharge of the spillway. The water discharged from the wheels flows partly into the small channel and partly into the main channel of the river. These channels are formed by an island about 200 feet below the power house. The main channel of the river is on the east side of the spillway, and over it are constructed six Tainter gates, each 20 feet wide, which are raised and lowered by machinery. Small gates are constructed to control the water flowing into the wheel pits. These small gates were out of repair, and on May 12, 1909, work was commenced repairing the gates leading into the unit on the west side of the power house. This was completed May 27th. Work was commenced on the east side May 28th. As

soon as this work was begun on the east side, the gates into the units where there were 16 wheels were closed, leaving the only water taken out of the pond for power purposes that which ran through the west eight wheels. The lands of plaintiff and his assignors are located along the river below this dam. The banks of the river at plaintiff's farm were from 4 to 6 feet high above the surface of the normal flow of the water. It was the claim on the part of plaintiff, and the theory upon which his case was tried, that the overflow of these lands which occasioned the damages complained of was caused by the careless and negligent operation by the servants and agents of defendant of the gates to this dam during the time they were repairing the small gates which controlled the water flowing into the wheel pits of the 16 wheels on the east side of the power house; that after the repair began on the east side, in order to allow the workmen to work in the wheel pits, the water was shut off from the east two units.

From May 27th to June 5th, with the exception of that which was discharged through the west unit which had been repaired, and was operating continuously, practically all of the water coming downstream was held back and had gradually accumulated in the 900-acre pond above the dam, so that at 4 a. m. June 5th the water was running over the crest of the dam 3.12 feet, when two of the Tainter gates, which had been raised 2 feet, were opened to 5 feet, and at 7 o'clock four of these gates, including the two just mentioned, were opened to 7 feet and remained open for six hours, which lowered the water in the pond 2 feet in five hours, and caused the tailrace to rise 7 feet higher than the normal flow of the river. Plaintiff's land was dry at 7 a. m. of this day, and three hours later this sudden discharge of water into this channel caused the water to overflow the banks of the

river and cover this farm. Plaintiff contends that this flooding continued during the next day, June 6th, causing the water on plaintiff's farm to rise 5 feet in 55 minutes, and that it was done by defendant for the purpose of lowering the water which had accumulated in the pond and then closing the gates to allow the water to again accumulate, while the water in the tailrace which filled the pits would quickly subside so that the men could continue repairs. The contention of defendant is that this high water was caused by excessive rains, and that it operated this dam with due care, without negligence, and only as was necessary under the circumstances. The foregoing statement, although very brief and omitting all reference to the exhibits and technical testimony which the record contains, we think gives the essential facts necessary to an understanding of the case. All of this evidence of all kinds in the case was submitted to and passed upon by the jury, which returned a verdict in favor of plaintiff, upon which a judgment was duly entered.

The defendant and appellant, in presenting this case before this court, both on the original hearing and on the rehearing, has confined its argument to errors which were assigned upon certain portions of the charge of the court as given, upon the refusal of the court to give certain requests, and the refusal of the court to submit special questions to the jury.

We will first consider the errors defendant has assigned upon the charge of the court as given, and in doing so will give the entire charge of the court material to the issue, indicating the portions claimed to be erroneous in the order as marked alphabetically in the record, and bracketed by defendant.

"Charge of the Court.

"The defendant had a right to build its dam and impound the water in the St. Joseph river, and hold back such water in an artificial lake or pond (A)

[but, by the building of that dam in question the plaintiff and his assignors were deprived of no rights that previously had belonged to them, except perhaps certain inconveniences that are not important to be considered in this case].

"(B) [The plaintiff and his assignors had the right to cultivate their lands and plant whatever crops they pleased along the so-called river bottoms, subject to the risk of overflow and damage from the waters of the river flowing in a natural way, and no matter how much damage plaintiff and his assignors may have suffered by reason of the overflow of water from the St. Joseph river from and after the 4th day of June, 1909, he and neither of them can recover in this action if the water for any reason so flowing upon and over their lands was not more than would naturally and necessarily have been cast upon their lands if there had been no dam at the place shown by the evidence, located near Berrien Springs.]

"By permission obtained from Congress and the secretary of war and the supervisors of Berrien county the defendant was permitted to build the dam in question. Under this permission the defendant had the right to pond and discharge the waters of the river in a reasonable way; (C) [that is, the defendant has a right to the reasonable use of the dam and impounded water in the prosecution of its business and in such varying quantities as the volume of the stream and its own interests made reasonably necessary, keeping in view the rights of lower riparian owners, that is, those who own lands below the dam; but such permission does not give the defendant company the right to wilfully and negligently operate the dam in such a manner that the lower property owners below the dam and along the river will be injured].

"In this case the plaintiff claims that on the 5th day of June, and for 10 days or 2 weeks thereafter the water in the St. Joseph river rose and flowed over its banks, and the water injured and destroyed his crops and the crops of the various persons who have assigned their claims to him. Those assignments were proper enough, and, having been made, the claims of the various parties (if they have any) can all be adjusted in this one suit.

"(D) [The plaintiff and his assignors were what

are known as riparian owners; that is, they owned and occupied lands along the St. Joseph river below the dam in question]. The simple fact that by an overflow of water from the river their crops were injured or destroyed would not render the defendant liable. And in this connection, I will charge you, as requested by defendant, that the defendant cannot be found guilty of negligence and held liable therefor without proof other than proof of the fact that the plaintiff's lands were overflowed. [Twenty-first. Given with following modification.] That means, the plaintiff or his assignors—that means that the fact that the plaintiff or his assignors received an injury does not entitle him or them to recover on that fact alone; in addition he must show, not only that he received an injury (he or they received an injury), but that the defendant, through some wilful and negligent act which a prudent man would not have done, caused the injury to the plaintiff and his assignors, or either of them.

"(E) Now [negligence consists in the doing or omitting to do something which persons of ordinary prudence and care would not have done, or would not have omitted to do, under like or similar circumstances].

"(F) [The plaintiff claims that at the time in question the defendant, by the dam before mentioned, had pooled or impounded the water in the St. Joseph river, preventing the natural flow of the river, until the fore bay or pond became full of water and was flowing over the crest of the dam; that the defendant then, without considering the rights of the landowners along the river below the dam, but wilfully and negligently, to serve some purpose of its own other than the reasonable use of such water, caused the gates of the dam to be opened so that a large volume and quantity of water was thereby suddenly discharging from such pond, and so greatly increased what would have been the natural flow of the river below the dam at that time, thereby flooding the lands of the plaintiff and his assignors, and that the lands of the plaintiff and his assignors would not have been so flooded and their crops injured and destroyed had the water been permitted to flow down the river uninterrupted and not interfered with by defendant and increased

by the wilful and negligent operation of its dam before mentioned.]

"(G) [If you find that the defendant did wilfully and negligently operate its dam as claimed, and the crops of the plaintiff and his assignors, or either of them, were injured as claimed, the defendant is liable to the plaintiff for all of the injury caused thereby to the crops of plaintiff and either or all of his assignors.]

"If, on the other hand, the jury find, as claimed by defendant, that at the time complained of there was an unusual flood of water, and that by no act of the defendant was an unusual flood of water, and that by no act of the defendant was the natural flow of the water greatly increased in the river, as claimed by plaintiff, and that said defendant was in no wise negligent in the management of its dam at the time in question, the plaintiff cannot recover.

"I now instruct you as prayed by the defendant:

" 'If the volume of water, naturally flowing in the river without increase thereof by reason of any act of the defendant, overflowed the banks and inundated the property of the plaintiff and his assignors, then the defendant is not responsible in this suit.' [Twenty-third. Given.]

" 'The case is founded upon a charge that the defendant was guilty of negligence in discharging water from its pond into the river and thereby flooding the lands of the plaintiff and his assignors, and there can be no verdict rendered against the defendant unless it was so negligent.' [Twenty-fifth. Given.]

" 'Negligence is a disregard of duty. The plaintiff's claim is that it was defendant's duty to discharge the water from the pond in such a manner as not to greatly increase the volume flowing in the river.' [Twenty-sixth. Given.] The defendant had a right to discharge water from its pond faster than it flowed in, so as to reduce the elevation of the pond and facilitate the business of the defendant, and it would not be liable therefor.' [Twentieth. Given, with the following modification.] Unless such water was negligently discharged and at a time and in a manner that a man of ordinary judgment and discretion would not have caused such water to be discharged, having in mind the rights of owners of land below such dam.

." 'The defendant had a right to discharge water so that its wheels could be repaired or any other necessary repairs made to its dam, if the discharge of water was necessary to enable the repairs of wheels or other necessary repairs to be made' [Eighth.  Given, with the following modification] ; but this right should be exercised by defendant with due regard to the rights of owners of lands below the dam.

"If the jury find that the defendant is liable for injuries to the plaintiff and his assignors, or either of them, on account of the negligence of the defendant as explained, then you will proceed to determine the amount of damages sustained by the plaintiff and his assignors, or either of them.

"(H) [The measure of damages (if you find that the plaintiff or any of his assignors are entitled to damages in this case) will be the reasonable value of the crops injured or destroyed at the time the injury occurred.  In determining the amount of damage so sustained, you will take into consideration all the facts and evidence of every kind produced before you by the plaintiff and by the defendant bearing upon the question of the amount of such damages that may have been sustained by the plaintiff and his assignors, or either of them, and as reasonable men determine the amount of damages so sustained by the plaintiff and his assignors, or either of them.]

"(I) [If you find that the plaintiff is entitled to damages, you will determine the amount of damages sustained by the plaintiff individually, and each of the assignors who are entitled to damages, and report the separate damages sustained by each to the court, as well as the total amount of damages which you may find.]

"If the jury find that the defendant is not liable for any damages sustained by plaintiff or his assignors, or either of them, under the evidence and instructions of the court, your verdict will be not guilty."

From defendant's brief it appears that its principal objection to the charge of the court is that the court omitted to instruct the jury what acts and omissions on the part of the defendant would amount to negligence.  In the 32 requests to charge which the defend-

ant presented (6 of which were given) we do not find any which specifically cover the proposition, although there are several which indicate the views of defendant as to what acts on its part would not amount to negligence. These were requests which were not given by the court, and read as follows:

"*First*. It was the duty of the defendant to keep its water wheels in repair and in condition to fulfill its contracts, regardless of the state of the water, and if the wheels became out of order so as to threaten their efficiency, and in order to put them in repair it was necessary to lower the water in the pond, then defendant had the right to discharge sufficient water to so lower it.

"*Second*. If defendant, in operating its plant in the customary manner, found it necessary to lower the water in the pond, and to do so discharged a large volume of water into its tailrace, and in so doing had no intent to injure any person, then it is not liable in this case."

"*Ninth*. Defendant was under no obligation whatever to hold the water at a point at or above the crest of its dam; on the contrary, it had an absolute right to discharge sufficient water so as to maintain such constant head as was demanded by its operations, and it cannot be charged with negligence in so doing.

"*Tenth*. If an unusually large volume of water was coming into defendant's pond, either because of a freshet, or because of a discharge from other ponds above, then the defendant had a right to allow such water to escape through its gates or wheels and to discharge sufficient of such water so as to maintain the head which it desired."

"*Fourteenth*. The defendant had a right to operate its wheels during the high water, as well as during low water, and it had a right to discharge all such water through its waste gates as interfered with its operation, without incurring any liability thereby."

From these requests to charge, and also from the briefs of its counsel and the oral argument upon rehearing, it appears that defendant's case is planted largely upon the theory that the defendant is in fact

a public utility, subject to control by public authorities in certain respects, and has thereby acquired, in the use and operation of its dams, other and different rights and privileges from those acquired by ordinary persons or corporations in the use and exercise of rights granted to them to maintain and operate dams upon the rivers of the State of Michigan; for example, if in the operation of its business of furnishing light and power to its customers, it becomes necessary at any time to use to its entire capacity, it had the right to do so, notwithstanding such operations released water impounded in its dams upon said stream in such large quantities that the riparian owners below were flooded and damaged; that such conduct could not be charged against it as negligence, and that all such damages were consequential; further, that notwithstanding freshets or discharge of ponds above, defendant had a right to discharge sufficient water at any time from the dam in question to maintain a head demanded by its operations or for the purposes of necessary repairs, and could not be charged with negligence if in so doing such large quantities of water were discharged by it that lower owners were damaged. This is not the law in the State of Michigan and never has been. The fact that a public utility, so-called, is operating dams on a stream in this State gives it no rights superior to an ordinary dam owner and no other or different liabilities. It is and always has been the law in this State that a dam owner cannot raise the water in his pond so as to flood and damage the lands of riparian owners upstream, or so manipulate the discharge of waters from his dam that they will flood and damage the lands of such owners downstream. All persons or corporations who own and maintain dams upon the streams of this State acquire only rights to a reasonable use of the water in such streams, subject to the rights of owners above

and below them, and are held responsible for damages accruing to upper or lower riparian owners caused by the negligent operation of such dams.

It was the duty of defendant, if not satisfied with the charge of the court in regard to what would constitute negligence on the part of defendant, to present a request in accordance with its views.

In our opinion the requests of defendant above quoted were properly refused by the court.

The exceptions taken by defendant to portions of the charge of the court as shown above, except as we have already stated, have not been separately presented and relied upon, so that it is necessary only for the court to consider such exceptions as are not covered by what has been said already.

Defendant's assignment (E) refers to the definition of the word "negligence" given by the court which, taken by itself, would not be considered as correct, but when taken in connection with such definition included in defendant's request No. 26, which was given by the court, the mistake is corrected, and whatever of error may appear must be considered as error without prejudice.

Another portion of the charge, assignment I, requires some attention. It refers to the instruction of the court as to how the jury should arrive at the amount of damages if plaintiff was entitled to recover. Plaintiff brought suit for himself and as assignee of 23 others whose lands were flooded. The testimony in the case tended to show individual losses of the assignors, as well as of plaintiff, and the total amount which he was entitled to recover, if anything, was made up of these separate items. We can see no possible prejudice arising from this. No claim is made that either the separate items or the gross amount were excessive. If any error can be said to have been committed, it was error without prejudice.

Defendant also assigns error upon the refusal of the court to submit to the jury certain special questions requested in writing by defendant, as follows:

"(1) Was the defendant negligent in permitting the water to raise in its pond at any time prior to June 7, 1909?

"(2) Was it negligent in opening its gates or discharging water from its pond prior to June 7, 1909?

"(3) Was it negligent in permitting the water to accumulate in its pond at any time prior to June 15th?

"(4) Was the volume of water flowing in the river from June 5th to 12th sufficient, at all times, to overflow the banks of the river upon the lands in question?"

The court properly refused to submit any of these questions to the jury. The first three questions were not sufficiently specific, not being limited to any length of time prior to the dates named in each of them, or any particular days; therefore there could be nothing conclusive in the answers to them. It follows that the defendant was not entitled of right to have them put. The fourth question was properly refused because there was nothing in the question to indicate what volume of water was referred to. If it was the natural flow of the stream, it required the consideration of facts which were not in evidence. There was no evidence of the natural flow of the water along the premises in question, nor of the elevation of the different parcels of land involved in the case, except as to plaintiff's own premises.

By statute special questions to the jury are required to be specific, in single, short sentences. Section 10237, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12943).

"Special questions to the jury are intended for the purpose of a finding upon some particular question of fact in dispute on the trial." *Van Auken* v. *Railway Co.*, 96 Mich. 307-314 (55 N. W. 971, 22 L. R. A. 33), and cases cited.

"The answers to special questions must be controlling in the case." *Fowler* v. *Hoffman,* 31 Mich. 215-220; *Cousins* v. *Railway Co.,* 96 Mich. 386 (56 N. W. 14), and cases cited.

From an examination of the entire charge of the court as given, we are satisfied that the learned trial judge fairly and correctly submitted the case without prejudice to defendant. The record shows that plaintiff claimed that the flooding of his lands and those of his assignors was not caused by the sudden rising of the waters in the river, but by the negligent operation of this dam by defendant in negligently impounding and releasing large quantities of water while undertaking repairs to certain of the wheels; defendant's claim and theory being that the high state of water was caused by heavy rains, and that in impounding and releasing water in large quantities while conducting repairs it was acting within its rights, and if damages were caused to plaintiff and his assignors no liability attached. This was the principal dispute of fact in the case. Nearly all of the testimony on both sides bears upon the question. The court submitted all questions of fact to the jury in a charge which we have already said contained no prejudicial error.

The errors assigned relative to the sufficiency of the declaration, the bill of particulars, and the assignments of claims made to plaintiff, and also to the refusal of the court to strike out all testimony on the part of the plaintiff as to the value of growing crops of corn on the premises flooded, have been examined, and we find no error was committed in overruling the objections of defendant as to these matters.

No prejudicial error appearing in the record, the judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.