## DERHAM *v.* HOVEY.

1. LIFE ESTATES — DEEDS — HUSBAND AND WIFE — RESERVATIONS —WASTE—WITHOUT IMPEACHMENT OF WASTE.

 A husband and wife may make a conveyance of land of which the husband is the owner, and in which the wife has only an inchoate right of dower, reserving a life estate in both husband and wife and the survivor, without impeachment of waste.

2. DEEDS—WILLS—CONSTRUCTION—INTENT.

 In interpreting devises and reservations in deeds, the purpose is to discern the intention of the testator or grantor from the words employed; the subject-matter and attending circumstances to be considered where the words have a doubtful meaning.

3. LIFE ESTATES—DEEDS—HUSBAND AND WIFE — RESERVATIONS —
WASTE—INTENT.

Where a husband and wife conveyed a farm reserving
"the use, occupancy, and control of said premises to them-
selves or to the survivor of either of them so long as
they or either of them shall live, and this conveyance is
not to take effect until the death of both of said first
parties," the words employed imported that the grantors
were to control the premises so long as either lived pre-
cisely as they might have done if the grant had not been
made, without impeachment of waste, but nevertheless
with reference to the grant, which was of the fee.

4. SAME—EQUITY — "WITHOUT IMPEACHMENT OF WASTE" — MALI-
CIOUS DESTRUCTION.

A court of equity will sometimes, when there is no rem-
edy at law, interpose when the tenant for life "without
impeachment of waste" does something affecting the in-
heritance in an unreasonable way, or seeks maliciously,
or unconscionably, to destroy it.

5. SAME—WASTE—CUTTING TIMBER—EQUITY.

Equity will not interpose to prevent a life tenant without
impeachment of waste from cutting certain growing trees
on the inheritance, where the testimony is to the effect
that the time had come when the trees would sell to best
advantage, that by their sale there was neither malicious
waste nor destruction of the estate, in whole or in part,
that it is not certain that, if unsold, the estate devolving
at the termination of the life estate would be in fact more
valuable, although neither the timber nor its proceeds
were to be used to improve the estate, and the purpose
of the cutting was commercial purely and not to enlarge
the area of the cultivated land.[1]

Appeal from Shiawassee; Williams, J., presiding.
Submitted January 5, 1917. (Docket No. 40.) De-
cided March 29, 1917.

Bill by Chloe M. Derham against Henrietta E.
Hovey and another to restrain waste and for an ac-

[1]On the question of impeachment of life tenant for waste
in cutting timber, see note in 37 L. R. A. (N. S.) 772.
    As to cutting of timber as waste which may be enjoined, see
note in 43 L. R. A. (N. S.) 262.

counting. From a decree for defendants, plaintiff appeals. Affirmed.

*Leon F. Miner (Francis J. Shields,* of counsel), for appellant.

*Louis E. Howlett,* for appellee.

OSTRANDER, J. The bill is filed to restrain waste and for an accounting. It was dismissed at the hearing in the court below, and plaintiff, appealing, presents two questions for decision. The first is whether the defendant Henrietta E. Hovey is a tenant of the premises, without impeachment of waste; the other whether, if she is dispunishable of waste, what she did, or was doing, was nevertheless waste.

Henry O. Hovey and Henrietta E. Hovey, his wife, without other consideration than love and affection, executed a deed of the premises in question October 25, 1892, to the plaintiff, their daughter, in which, after the description of the premises, a farm containing 80 acres, appears the following:

"The parties of the first part hereto reserve the use, occupancy, and control of said premises to themselves or to the survivor of either of them so long as they or either of them shall live, and this conveyance is not to take effect until the death of both of said first parties."

Whether this deed and another made to a son conveying other land, had been delivered was considered in *Griffin* v. *Hovey,* 179 Mich. 104 (146 N. W. 210), in which action a bill filed by the administrator of the estate of Henry O. Hovey to set aside the deeds was dismissed.

Upon the land conveyed to plaintiff, the daughter, there was and is 35 acres of timber land, and among others were 70 elm trees, some, perhaps one-fourth of them, matured, and the others immature and grow-

ing, scattered over the timber lot. The widow, Henrietta, contracted with the other defendant to sell to it, and it cut the logs from, these 70 trees, and paid her therefor $417.55. The tips and rejected butts of the trees contain some 200 cords of stovewood, to manufacture which would cost 70 to 80 cents a cord, and to market it some 40 cents a cord. It is worth in a nearby market $2.75 a cord. There remains in the wood lot sufficient timber for firewood, building purposes, and for repairs for the farm for many years.

As to the estate reserved to the widow, it is said by appellant that, because Henry O. Hovey owned the land and his wife had only a dower interest therein, no greater estate could be reserved to her in the whole of the land than she would have had in an undivided one-third thereof if the deed had not been made; that in law the deed reserves to her a life estate with no privileges with respect to the use and control thereof other than such as the dower tenant would have. We have held (*Engel* v. *Ladewig*, 153 Mich. 8 [116 N. W. 550]) that a husband and wife may in such a conveyance reserve to both or to the survivor the use of the land so long as either lives; the reasoning there employed being that, since the two can convey the fee, they can in conveying it impose such limitations as they please. There is no legal objection to the reservation of a life estate in both husband and wife, dispunishable of waste.

In *Stevens* v. *Rose*, 69 Mich. 259 (37 N. W. 205), the owner deeded land to his son, and the son executed to his father a life lease of the land, "to have and to hold, to use and control as he thinks proper, for his benefit during his natural life." This language, it was held, imported a leasing without impeachment of waste and that the lessee had the right to do all acts which such a tenant might do.

In *Duncombe* v. *Felt*, 81 Mich. 332 (45 N. W. 1004),

there was a conveyance of land by the owners to their son, who gave back a life lease. The lease contained the recital that the consideration for it was the conveyance to the lessor of the premises by the lessees and the provision:

"And it is expressly understood that the second parties are to have as full and complete control of said premises, while they or either of them shall live, as though such conveyance had not been made."

It was held that it was a lease without impeachment of waste.

In *Heliker* v. *Heliker*, 184 Mich. 657 (151 N. W. 757), a mother devised to a son for and "during the term of his natural life, the entire use, income and profit of the following described real estate, * * *" with remainder to another son. It was held that the life tenant did not hold without impeachment of waste.

In interpreting devises and reservations in deeds, the purpose is to discern the intention of the testator, or grantor, from the words employed; the subject-matter and attending circumstances to be considered where the words have a doubtful meaning. Certain presumptions may be indulged, and often precedent judicial interpretations of the meaning of similar words amount to establishing a rule of property which cannot be ignored. In the case at bar the beneficial use of what was granted in the deed is postponed until the death of the survivor of the grantors. The words employed in the reservation, especially those which follow it and defer the taking effect of the grant until after the death of the survivor, import, I think, that the grantors were to control the farm so long as either lived precisely as they might have done if the grant had not been made, but nevertheless with reference to the grant which was of the fee.

The phrase "without impeachment of waste" is in equity so restrained in its meaning that it will not

permit the tenant for life to commit malicious waste
so as to destroy the estate, and a court of equity, some-
times when there is no remedy at law, will interpose
when the tenant "without impeachment of waste" does
something affecting the inheritance in an unreason-
able way, or seeks maliciously, or unconscionably, to
destroy it. The meritorious question here is whether
what the grantor did was so unreasonable an act of
control that the owner of the inheritance may com-
plain thereof. Growing timber was at common law
the property of the owner of the inheritance, and the
effect of a lease without impeachment of waste was
to transfer to the lessee for many purposes property
in the timber.

The learned trial judge found, upon testimony which
supports the finding, that the acreage of this farm
contained in the wood lot was relatively large and
larger than that found in the neighborhood upon farms
of equal size; that some of the trees sold were partly
decayed; that there was a present market in the vi-
cinity for the trees; and that it was not bad hus-
bandry to sell and remove them. To be contrasted
with these facts are others, among them the one that
the timber itself, or its proceeds, was not to be used
to improve the estate; that it was a commercial trans-
action purely, and in making the sale of timber the
purpose was not to enlarge the area of cultivated
land and diminish the size of the woodlot. Assuming,
as from the testimony it may be assumed, that the
time had arrived when the trees would sell to the
best advantage, the time when an owner in control
would in the exercise of a fair judgment sell them,
there was accomplished by their sale neither mali-
cious waste nor a destruction of the estate in whole
or in part. The matured trees would deteriorate if
left standing. The immatured trees might for a period
increase in value, but it was not necessarily bad hus-

bandry to presently sell them together. Nor can it be certain that, if unsold, the estate devolving at the termination of the life estate would be in fact more valuable. The tenant was not stripping the estate of timber, and no further act of cutting or removing timber has been threatened.

In my opinion, the decree dismissing the bill should be affirmed, with costs to the appellees.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.