James G. McHENRY and Donald G. McHenry, Plaintiffs,

v.

FORD MOTOR COMPANY, a Delaware corporation, Defendant.

No. 12649.

United States District Court E. D. Michigan, S. D.

Dec. 13, 1956.

Robert A. MacDonell, Detroit, Mich., for plaintiff.

William T. Gossett, Dearborn, Mich., Richard B. Darragh, Robert W. Scott, Lloyd T. Williams, Jr., Dearborn, Mich., of counsel, for defendant.

FREEMAN, District Judge.

In 1925, the plaintiff, James G. McHenry, an attorney, and his wife Adele H. McHenry, now deceased, were the owners of approximately 190 acres of land bordering on the Huron River in Ypsilanti Township, Washtenaw County, Michigan, which they acquired in 1918. They conveyed 155 acres of this tract of land to the defendant, Ford Motor Company, by deed dated October 5, 1925, and a portion of the remaining parcel of 35 acres was later conveyed to their son, the plaintiff Donald G. McHenry. The land so conveyed to defendant was purchased for the express purpose of flooding it with the waters of an artificial lake or reservoir to be created by a dam the defendant proposed to build downstream on the Huron River. The dam was completed in 1932.

This suit was filed April 29, 1953, in the Circuit Court for Washtenaw County, Michigan, to enjoin the alleged flooding and eroding of plaintiffs' remaining lands by the waters of defendant's reservoir; to compel restoration of plaintiffs' lands, improvements and equipment; and to recover money damages for injuries sustained. The action was removed to this court by reason of the diversity of citizenship of the parties. The deposition of the plaintiff James G. McHenry was thereupon taken and filed and it was stipulated that, if the deposition of the plaintiff Donald G. McHenry were taken, his testimony, as to matters within his knowledge, would be the same as that of his father.

This matter is before the court on defendant's motion for summary judgment under Rule 56(b) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. which provides in part that a party against whom a claim is asserted may move for summary judgment and that judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

For the purposes of this motion, the facts material to the issues of law raised thereby and not in dispute, appearing from the complaint and deposition of

plaintiff James G. McHenry, are as follows:

At the time of the said conveyance to defendant in 1925, McHenrys, the grantors, owned 190 acres of land, more or less, bordering on the Huron River. About 10 acres of the uplands were used by them as a country estate on which they had constructed a large stone house, garage, gatehouse and other improvements. Approximately 4 acres around the house were landscaped. The remaining acreage had been used as a dairy farm since they acquired the land in 1918. McHenry had also developed water power for his own grist mill and domestic lighting by means of a water wheel on a canal dug along the river.

Such was the condition of this tract of land when defendant purchased 155 acres thereof bordering on the river, including the water power project, by deed dated October 5, 1925, for the sum of $81,000. The 35 acres retained by the grantors included the residence and other buildings and improvements. The land so conveyed to defendant was bounded by the center line of the Huron River and by certain metes and bounds intended to be the 686-foot flow line traverse and the deed was given subject to certain conditions and restrictive covenants, including the following:

"It is contemplated by the parties hereto that a pond or lake, in connection with a dam and power plant located lower down the stream, will be formed upon said lands by waters of the Huron River impounded thereon. In addition hereto, first party also grants and conveys to second party all flowage rights, running with said property due to the flowage thereof by said pond. No building or structure shall be erected on the lands hereby conveyed, nor shall any part of said lands, or any waters thereon, be occupied or used in any manner that would render the remaining lands of the parties of the first part adjacent to or abutting upon the lands hereby conveyed unsuitable or undesirable for high-class residence purposes; nor shall said lands be used otherwise than for the purpose of flowage by the waters of such pond or lake to be formed as aforesaid. This restriction shall remain in force for a period of thirty (30) years from the date hereof.

\* \* \* \* \* \*

"The parties of the first part reserve for themselves and for the personal use of the persons who shall be owners of, and shall reside upon, any part of their remaining lands abutting on the lands hereby conveyed, the right at all times of ingress and egress to and from any waters upon any part of said lands, from and to any part of their remaining lands abutting upon or adjacent to the lands hereby conveyed, together with the right to go upon and use said pond or lake and the waters thereof for the purposes of boating, bathing, fishing, hunting, the same as any riparian owner on the banks of a natural lake or navigable stream."

The deed to defendant was drafted by the grantors' attorney, assisted by Mr. McHenry, himself an attorney, following discussions and suggestions as to terms and provisions by agents for both parties.

Defendant's proposed dam referred to in the deed was constructed over a mile downstream from plaintiffs' land and was completed in 1932. The impounded waters reached the 686-foot contour level in 1933. Plaintiffs' remaining 35 acres of uplands are bounded in part by such waters for a distance of 5549.13 feet along the 686-foot flow line traverse and such land was soft, porous and easily eroded. The waters of defendant's reservoir had been washing away and undercutting plaintiffs' retained lands ever since the waters were impounded and, when this suit was filed in 1953, about 12 acres of such retained land, with trees, shrubbery, fences and some pump houses, with attachments, had been washed away and rendered worthless.

The foundations of the residence building are threatened with collapse and, except for 5 or 6 acres, the remaining land is of no value for farming or residence purposes and, according to the complaint, is unsalable, although plaintiffs had never offered the land for sale.

The plaintiff James G. McHenry complained to defendant about the erosion several times in 1933 to no avail and in 1947 he and his attorney wrote letters to defendant as a result of which defendant's agents inspected the property and stated that the lands ought to be "fixed up," which would cost an enormous sum of money, from which Mr. McHenry inferred and was led to believe that defendant would do something about the situation.

When asked as to his reasons for the restriction in the deed as to the use of the land by the grantee, James G. McHenry testified that he "didn't want them to put something in there that would militate against the use" of the two houses on the land, that he also contemplated selling some lots since the remaining acreage was no longer suitable for farming and that "we didn't want a landing field on the place."

Defendant has done nothing with regard to its dam not contemplated by the parties and did nothing in connection with the dam that increased the natural action of the waters in the reservoir.

The complaint alleges that defendant owes plaintiffs a duty to maintain its reservoir of water in such manner as not to damage plaintiffs' adjacent land and that because of defendant's negligence (which is unspecified) the waters of the reservoir, by wave action, percolation, soaking, attrition and freezing, have eroded and damaged and are continuing to erode and damage plaintiffs' lands and that such flowage and erosion of plaintiffs' lands constitute a continuing trespass.

In support of its motion for summary judgment, defendant contends:

I. The plaintiffs expressly granted flowage rights to the defendant, which rights preclude any liability to the plaintiffs for the natural action of the impounded water.

II. Absent negligence; a reservoir owner is not liable to riparian owners for damages caused by the natural action of waters impounded in the manner consented to by the riparian owners.

III. The defendant has acquired by prescription the right to abut its waters against the plaintiffs' lands with all the natural consequences thereof.

IV. The plaintiffs' claims are barred by laches and the statute of limitations.

The gist of plaintiffs' action is that the following restrictive use covenant in the deed:

"* * * nor shall any part of said lands, or any waters thereon, be occupied or used in any manner that would render the remaining lands of the parties of the first part adjacent to or abutting upon the lands hereby conveyed unsuitable or undesirable for high-class residence purposes; nor shall said lands be used otherwise than for the purpose of flowage * * *."

was intended to impose liability on the grantee for erosion of plaintiffs' retained land without being in derogation of the grant of flowage and also that the rule of absolute liability as stated in the early English case of Rylands v. Fletcher, L.R. 1 Ex. 265, L.R. 3 HL 300, applies in Michigan and to the facts and circumstances of this case.

Defendant argues that the covenant invoked by plaintiffs cannot be construed as a limitation on the grant of flowage so as to make the grantee liable for erosion of plaintiffs' land by natural action of the impounded waters because such a construction would nullify and destroy the grant and that the rule of absolute liability pronounced in Rylands v. Fletcher is not applicable here and does not pertain in Michigan. Defendant contends that such covenant relates to the use of the water rather than its mere existence or maintenance at the agreed level.

This issue indicates an ambiguity or uncertainty in the restrictive use covenant in question which must be resolved by ascertaining the intent of the parties, if possible.

■ The primary object in construing deeds and other written instruments is to ascertain the intention of the parties from the words employed. Derham v. Hovey, 195 Mich. 243, 161 N.W. 883, 21 A.L.R. 999.

■ A deed should be construed as a whole and the intent must primarily be gathered from a fair consideration of the entire instrument. 26 C.J.S., Deeds, § 84, p. 822.

"The crucial deed should be construed so as to give effect to the intention of the parties, and such intention shall, if possible, be ascertained by viewing the deed from its four corners and considering all its provisions." Bice v. Holmes, 309 Mich. 110, 115, 14 N.W.2d 800, 802.

■ If the deed indicates an ambiguity or some uncertainty, the court may also consider the subject matter and attending circumstances in determining the intention of the parties. Negaunee Iron Co. v. Iron Cliffs Co., 134 Mich. 264, 96 N.W. 468; Thomas v. Jewell, 300 Mich. 556, 2 N.W.2d 501, 139 A.L.R. 1335; Derham v. Hovey, 195 Mich. 243, 161 N.W. 883, 21 A.L.R. 999.

In the case of Glidden v. Beaverton Power Co., 223 Mich. 383, at page 396, 193 N.W. 862, at page 866, involving a construction of reservation of flowage rights in a deed, the court said:

"It is also a general rule that in construing ambiguous or uncertain parts of an instrument the intent of the parties, if ascertainable, should govern. To that end we may also concede plaintiffs' further contention that the deed should be construed 'with reference to the state of the property, and what was in contemplation of the parties when the parties acquired their respective rights.' "

In the instant case, defendant purchased the 155 acres of riparian land and flowage rights for the express purpose of creating an artificial pond or reservoir in connection with a dam and power plant to be erected lower down the river. The deed itself clearly indicates such purpose was contemplated by both parties. In fact, the lands so conveyed were to be used for no other purpose, according to the covenant in question, which provides in part:

"* * * nor shall said lands be used otherwise than for the purpose of flowage by the waters of such pond or lake to be formed as aforesaid."

In addition to conveying title to the lands in fee, the grantors, as a part of the conditions contained in the deed, expressly granted and conveyed to the defendant "all flowage rights running with said property due to the flowage thereof by said pond." Immediately following such grant of flowage is the covenant invoked by plaintiffs to the effect that no part of such lands or waters thereon shall "be occupied or used" in any manner that would render grantors' remaining adjacent lands unsuitable for high-class residence purposes. Possibly the precise situation involved here was not contemplated by the parties, but it is significant that the grantors' attorney, Paul Moody, in negotiations prior to a final draft of the deed, requested of defendant's attorney, by letter dated September 5, 1925, a paragraph in the deed granting flowage rights with the following restriction:

"Provided, however, that surface flowage shall not extend beyond the boundaries of the lands hereby conveyed upon the remaining lands of the parties of the first part."

This proposed restriction was objected to by defendant and was not included in the deed as executed by the grantors.

To construe the deed as contended by plaintiffs would in effect require defendant to build a retaining wall or otherwise protect plaintiffs' 5,549.13 feet of

shore line adjoining the reservoir, if defendant were to have the full use and enjoyment of the rights conveyed. Anything less than maintaining the waters at the agreed 686-foot level would undoubtedly render defendant's power plant ineffective or worthless. To lower the level of the water below the agreed 686-foot traverse line would also deprive defendant of making any use of the exposed land since the restrictive covenant also provided that the lands conveyed should not "be used otherwise than for the purpose of flowage" and would not fulfill the contemplation of the parties, as set forth in the deed, that a pond or lake "will be formed upon said lands by waters of the Huron River impounded thereon."

To construct a retaining wall or other protection along plaintiffs' shore line or to lower the level of the water below the 686-foot level would deprive the grantors of the privilege of using the impounded waters for boating, bathing, fishing, etc., and also their right of ingress and egress to and from said waters and thereby place defendant in the dilemma of violating such reservation in the deed if the grantors are thus denied such privileges or make defendant liable for erosion of grantors' lands if the reservoir waters are maintained at the agreed level. Such an absurdity could not have been intended by the parties.

■ Uncertain or ambiguous restrictions on the use of a specific grant in the same instrument should not be interpreted so as to nullify the grant.

In the case of Glidden v. Beaverton Power Co., 223 Mich. 383, at page 398, 193 N.W. 862, at page 867, supra, the court also said:

"In case of any repugnancy in different clauses of a deed all parts should be made to harmonize if practicable upon consideration of the whole instrument."

A more reasonable construction of the covenant in question is that it relates to the *use* of the impounded waters at the agreed level rather than the mere *maintenance* of the waters at such level, as defendant contends.

The purpose of the covenant is indicated by the express language of the covenant itself to the effect that the grantors' retained lands were not to be rendered undesirable for "high-class" residence purposes. This is a clue to what the grantors intended, since the descriptive adjective "high-class" could only be relevant to the *use* of the water, such as pollution, noise, accumulation of debris, etc. An intention to preserve the very existence of the retained land for all purposes would have been expressed in more comprehensive terms.

Furthermore, the reasons given by plaintiff James G. McHenry for inserting this restriction in the deed, according to his testimony as hereinbefore set forth, also refers to activities on the part of the grantors unrelated to merely maintaining the water at the agreed level.

■ Restrictive covenants and ambiguous provisions in deeds are construed most strongly against the grantor and most favorably to the grantee, according to other well-settled principles of law.

"Restrictive covenants * * * are to be construed most strongly or most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, * * * all doubts or ambiguities being resolved in favor of a free use of property and against restrictions." 26 C.J.S., Deeds, § 163, pp. 1098–1100.

This rule of construction is especially applicable where the grantor is a practicing attorney, as in this case.

"The rule of construing deeds requires that they be construed most strongly against the grantor, and the reasonableness and justice of such rule is never more manifest than when the grantor is, as in this case, a lawyer." Clute v. New York Cent. & H. Railroad Co. 120 N.Y.

267, 24 N.E. 317, 318. See also Brawley v. Copelin, 106 Ark. 256, 153 S.W. 101.

The Supreme Court of Michigan states the rule in even broader terms:

"The legal maxim must here be borne in mind that all grants must be construed most strongly against the grantors." Butler v. Grand Rapids & I. Railroad Co., 85 Mich. 246, 255, 48 N.W. 569, 571.

■ The same rule applies to specific grants of easements of flowage:

"Thus, an instrument granting an easement of flowage must, consistent with its language, be most strongly construed against the grantor and most favorably to the grantee, and construed so as to pass to the grantee the greatest possible estate." 93 C.J.S., Waters, § 27b, p. 644.

■ The law of Michigan is controlling in this case. However, no Michigan case has been found involving a claim of the nature asserted here by plaintiff. The case of Gravel v. Little Falls Imp. & Nav. Co., 74 Minn. 416, 77 N.W. 217, 218, is a somewhat analogous situation involving the construction of a deed whereby the plaintiff granted defendant the use and enjoyment of river waters and land covered thereby and the right to place log-sorting booms and piers thereon, which deed also contained a restrictive use covenant providing that the grantee " 'in the exercise of the rights of way herein granted * * * shall not disturb or injure said parties of the first part * * * in the use and enjoyment of the said lands hereinbefore described, except so far as may be necessary for the exercise and enjoyment of the rights and privileges hereinbefore conveyed.' " Plaintiff sued for damages for the flooding of his lands abutting on the river caused by the nonnegligent operation of the defendant's booms and piers. The court said, 77 N.W. 218–219:

" * * * the language of a written instrument may be construed in the light of surrounding circumstances, and for that purpose the court should, as far as possible, put itself in the place of the parties at the time of the execution of the instrument, and interpret its language from that standpoint. * * *

"* * * it is a settled maxim of the law that the granting of any particular thing shall be taken to carry with it all which is necessary to the beneficial enjoyment of the thing granted, and which it is in the power of the grantor to convey. * * * The evidence clearly tended to show that the natural and necessary result of exercising the right expressly granted was to a certain extent to flood plaintiff's land, and that the right to do so was essential to the beneficial use of the rights expressly granted. If so, then such right was included in the express grant by necessary implication."

■■ The language of the court in that case to the effect that a grant carries with it everything necessary to the beneficial enjoyment of the thing granted within the power of the grantor to convey is especially applicable here. It also seems to this court that the scope of a grant must be viewed in the light of the actual use thereof and is not limited by some unforeseen damage resulting to the grantor from such use.

■ The effect of construing the restrictive use covenant so as to make the defendant liable for eroding plaintiffs' lands by the natural action of the impounded waters is to nullify the grant of flowage and does not harmonize with other provisions in the deed. This court therefore concludes, from a fair consideration of the entire deed and attending circumstances, that such a harsh result was not intended by the parties. Defendant properly contends that, if the grantors desired to impose a duty on the grantee to protect their shore line against erosion, they should have so pro-

vided in the deed. Such a duty cannot now be imported into the deed by a construction contrary to well-established rules.

Plaintiffs also rely for recovery on the rule of absolute liability, as pronounced in Rylands v. Fletcher, L.R. 1 Ex. 265, L.R. 3 E. & I.App.Cas. 330. In that case, the defendant constructed a reservoir on its own lands, unaware of soil-filled shafts underneath, running vertically downwards to old coal workings under the reservoir site which communicated with plaintiff's colliery by means of other old coal workings under intervening lands. When the reservoir was completed and partially filled with water, one of the shafts burst downwards in consequence of which the water flowed into the old workings underneath the reservoir and by means of ground communications, into plaintiff's colliery and flooded it. The Exchequer Chamber, in holding the defendant liable, and affirmed by the House of Lords, declared that a person who brings something on his property which was not naturally there and which is "likely to do mischief if it escapes, must keep it in at his peril, and if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape." It does not appear that the doctrine of that case has been accepted as the law of Michigan and in the case of Scott v. Longwell, 139 Mich. 12, 102 N.W. 230, 231, relied on by both parties to this suit, the court, in referring to Rylands v. Fletcher, said:

"The correctness of this doctrine has been much discussed by law writers and courts. * * * We need not, however, in this case, as we shall point out, undertake to determine its correctness."

No Michigan case has been cited or found approving the doctrine of Rylands v. Fletcher and in any event the situation in that case is not involved in this case. Here the reservoir did not burst and the damages complained of by plaintiff were caused by the natural action of waters impounded on lands sold by plaintiffs to defendant for the very purpose of establishing a reservoir.

In Radtke v. Rothschild Water Power Co., 158 Wis. 271, 148 N.W. 866, involving a situation very similar to the instant case, the plaintiff, who owned riparian lands consisting of uplands, bluffs and lowlands, sold the lowlands to defendant to be flooded by waters impounded by a dam to be built lower down the river. The impounded waters backed up against the base of the bluffs and plaintiff sued for damages to his lands, not overflowed, but injured by the water. The court, in directing the entry of a judgment for defendant, said, 148 N.W. 868:

"Looking into the situation of the parties, the locality and the subject-matter of the grant as disclosed by the surrounding circumstances, it is manifest that the grant was intended to convey the title in fee to the lowlands, as we have heretofore indicated, and that, when applied to the physical situation disclosed, the grant includes the right of flowing the lowlands in such parts of the side of the bluff as is required for the maintenance of the defendant's dam near Rothschild rapids in the Wisconsin river. It is also apparent that the enjoyment of this right so granted incident to the maintenance of the dam has necessarily caused a raising and setting back of the water in the river, and that this causes a flowing of a part of the sides of the bluff. Under these circumstances and conditions the defendant has acted within his rights, and no rights of the plaintiff have been violated by this raising and setting back of the water, and hence no claim for damages exists in the plaintiff's favor."

In a concurring opinion in that case, it was stated:

"My concurrence in this decision rests upon the notion that a conveyance of bottom lands adjoining

a bluff and stated to be south and west of such bluff carried with it to the grantee an easement along the side of the bluff necessary for the impounding and support of the raised water where it is shown that the parties understood that the grantee purchased the lowland for the purpose of flooding the same and with reference to a contemplated improvement requiring such flooding."

It is unnecessary to decide whether the grant of flowage in the instant case carried with it an easement to use plaintiffs' retained lands to impound the waters of the reservoir in view of the conclusion already reached that a grant carries with it everything necessary to the beneficial enjoyment thereof within the power of the grantor to convey. The result may be the same in a particular situation and may include such an easement, if necessary, for the beneficial enjoyment of the thing granted.

The Supreme Court of Michigan has recognized wilful and negligent acts as bases of liability for damage resulting from waters impounded by a dam. In the case of Scott v. Longwell, supra, the court said, 139 Mich. at page 15, 102 N.W. at page 231:

"According to all authorities, there is imposed upon a person who collects water in an artificial reservoir an obligation to use care 'proportioned to the danger of injury from the escape.' See Cooley on Torts (2d Ed.), p. 680."

In Taylor v. Indiana & Michigan Electric Co., 184 Mich. 578, at page 585, 151 N.W. 739, at page 742, L.R.A.1915E, 294, a case involving damage to a lower riparian landowner from the release of waters impounded by a dam, the court approved the following charge to the jury:

" 'And in this connection, I will charge you, as requested by defendant, that the defendant cannot be found guilty of negligence and held liable therefor without proof other than proof of the fact that the plaintiff's lands were overflowed.' "

In Rockford Paper Mills, Inc., v. City of Rockford, 311 Mich. 100, at pages 105–106, 18 N.W.2d 379, at page 382, also involving damage to the mill and dam of a lower riparian owner caused by the release or flow of water over the dam of defendant, the court said:

"The law of Michigan is set forth in Taylor v. Indiana & Michigan Electric Co., 184 Mich. 578, 151 N. W. 739, 741, L.R.A.1915E, 294, wherein the court held that the damages must arise through the negligent operation of the dam."

The complaint in the instant case, in numerous paragraphs, alleges damages to plaintiffs' retained lands as a result of negligence on the part of defendant without specific averments of the acts of negligence unless it is the general allegation consisting of Paragraph 23 of the complaint which states:

"And the plaintiffs say that it was and is the duty of the defendant, to so construct and maintain said mill-pond, lake or reservoir of water in such a manner as not to damage the land of the plaintiffs adjacent to, or abutting on, said artificial body of water."

Having already decided that defendant owed no such duty to plaintiff under the circumstances of this case, it appears that the complaint utterly fails to charge actionable negligence on the part of defendant in *using* the impounded waters at the agreed level.

█ In essence, plaintiffs rely on the rule of absolute liability pronounced in Rylands v. Fletcher rather than negligence of the defendant. Since the doctrine of Rylands v. Fletcher does not apply here for the reasons already given, this ground for recovery also fails.

█ Resolution of the case on the propositions discussed makes it unnecessary to consider the other defenses. There is no genuine issue of material

fact bearing on the issues raised by plaintiffs' action and defendant being entitled to a judgment as a matter of law, the motion for summary judgment is therefore granted and an appropriate order may be entered.