SCOTT *v.* LONGWELL.

1. Waters and Watercourses—Percolation—Actions—Pleading—Defenses Under General Issue.

In an action for injuries to plaintiff's land by water from defendants' mill race, the right under a deed and by prescription to do the acts complained of are affirmative defenses, which, under Cir. Ct. Rule No. 7, cannot be shown under the general issue.

2. Same—Percolation from Mill Race—Care Required.

The owner of a mill race must use care "proportionate to the danger" to prevent the water from escaping and percolating through the banks to the injury of adjacent property owners.

3. Same—Adjoining Landowners—Damages—Duty to Lessen.

Even if it be the duty of the owner of property adjacent to a mill race to construct a drain on his property to prevent in-

jury from percolation of the water through the banks, he is only bound to use ordinary care.

Error to Van Buren; Carr, J.   Submitted October 7, 1904.   (Docket No. 38.)  . Decided January 30, 1905.

Case by Charlotte Scott against George W. Longwell, Sr., and the First National Bank of Paw Paw for damages caused by flooding.   There was judgment for plaintiff, and defendants bring error.   Affirmed.

*Thomas J. Cavanaugh*, for appellants.

*David Anderson*, for appellee.

CARPENTER, J.   Defendants maintain an artificial mill race in the village of Paw Paw.   Plaintiff is the owner of residence property adjacent to said race.   Twice—once in 1897, and again in 1902—the water was out of said mill race for several months.   When the water was let in, and for several months thereafter, the water from said race, as we must assume from the verdict in this case, seeped through the banks into plaintiff's cellar, and on her land. To recover damages for said flooding, plaintiff brought this suit, and recovered a verdict and judgment in the court below.   We are asked to reverse that judgment on several grounds.

It is contended that the only ground upon which plaintiff can recover is that of negligence, and that no negligence is averred in the declaration.   It is a sufficient answer to this complaint to say that, in our judgment, defendants' negligence is averred in the declaration.

Defendants urge that they had a right to do the acts complained of as wrongful, · by virtue of a reservation in a certain deed, and that by prescription they had a right to flood the land of plaintiff.   It ' is a sufficient answer to these claims to say that they afforded affirmative defenses, and were not, therefore, under Circuit Court Rule 7, admissible under defendants' plea of the general issue.

Complaint is made because the trial court did not give the following instructions to the jury, preferred by defendants:

"You are further instructed that the defendants had a legal and lawful right to keep and maintain the mill race, and keep and maintain the water therein, for the purpose of operating their mill; and if you find from the evidence that they did so keep and maintain the same, and did keep and maintain water therein for the purpose of operating their flouring mill, and that the same was kept in an ordinarily prudent manner, and that the defendants at no time were guilty of negligence in maintaining and keeping water therein or in repairing the same, then plaintiff cannot recover, and your verdict should be for defendants.

"If you find from the evidence that the defendants were using their property, to wit, the milling property and mill race, in an ordinarily prudent manner, then any injury that might befall any property next adjoining said mill race on account of any water percolating or seeping through the banks or bottom would, in law, be a mere incident to the proper use of such milling property and race; and, unless the defendants were guilty of negligence in repairing said race, or in keeping or maintaining water therein, your verdict should be for defendants.

"You are further instructed that no damages can be recovered by the plaintiff in this case on account of the fact that the defendants maintained or kept the mill race, and that such mill race contained water that percolated or seeped through the bottom or sides of said race and undermined plaintiff's house, so long as said water was in said race for a lawful purpose, and was being used by defendants for a lawful purpose, and did not escape therefrom on account of the negligent conduct of defendants."

In our judgment, under the peculiar circumstances of this case, the giving of these requests would have misled the jury and diverted them from the precise question in controversy. To make this clear, a somewhat more detailed statement of the case is necessary. Plaintiff complains of being damaged by the escape of water from the race, not on ordinary occasions, but on two extraordinary occasions. It is shown that, preceding each of these occasions, the race had been emptied for several months; that

on the second of these occasions defendants scraped the bottom of the mill race, and cleaned out the rubbish which had accumulated therein.  The undisputed testimony— and it comes from defendants' millwright who planned the improvements—is that " a mill race, when first construct- ed, is likely to leak, and after it has stood for some time the mud will work so it will be water-tight.  The effect of drawing off the water would be nearly the same as scrap- ing—as a new construction.  So that, after it stands awhile empty, when the water is turned back in it will seep—water-soak—through, to a certain extent, on ac- count of the ground cracking deep if left dry for some time.  If dry a short time and scraped, it would have the same effect as a new construction."  This testi- mony affords the explanation of plaintiff's injury, for her property was not flooded, except when the water was turn- ed in after the race had for a long time stood empty, on the occasions specified.  This testimony is also important as indicating the obligation imposed upon defendants.

The precise obligation imposed by law upon one who collects waters in an artificial reservoir is a subject of grave dispute.  In *Rylands* v. *Fletcher*, L. R. 1 Ex. 265, L. R. 3 H. L. 330, it was declared that no amount of diligence is a legal excuse, if such water escapes and damages an- other.  The correctness of this doctrine has been much discussed by law writers and courts.  It has been approved in Massachusetts (see *Gorham* v. *Gross*, 125 Mass. 232); and Minnesota (see *Cahill* v. *Eastman*, 18 Minn. 324). It has been disapproved in other States.  See *Losee* v. *Buchanan*, 51 N. Y. 470; *Pennsylvania Coal Co.* v. *Sanderson*, 113 Pa. St. 126; *Marshall* v. *Welwood*, 38 N. J. Law, 339.

We need not, however, in this case, as we shall point out, undertake to determine its correctness.  According to all authorities, there is imposed upon a person who col- lects water in an artificial reservoir an obligation to use care "proportioned to the danger of injury from the es- cape."  See Cooley on Torts (2d Ed.), p. 680.  If we im-

pute to defendants, as we must, under the law (see Pollock on Torts [Webb's Am. Ed.], pp. 26, 27), a knowledge and skill possessed by competent millwrights, we must presume that they knew that the water would escape through the banks of the race which had been so long empty, and they were bound to take precautions to prevent it. If there was any evidence that precaution was taken, it is to be found in the following testimony of defendant Longwell:

"I used all the caution and judgment that I could to do a good job, and did not for a moment apprehend that I was doing any one any harm. There was rat holes along there—muskrat holes, we call them. We tried to fill them up, and did, with the dirt we scraped from the sides. I instructed Mr. Goss and John Chapman to take their hoes and shovels and dig the dirt that was scraped up on the sides, and level it off, poke it up under the sod and grass that grew long there, and to look out for all rat holes that they could find, and fill them up."

In view of the undisputed fact that such a race was likely to leak on account of the scraping and cracks, I think that we could safely say, as a matter of law, that defendants were negligent in not taking proper precautions to prevent the water escaping. At any rate, defendants were bound to use care proportioned to the danger. If the question of defendants' negligence was one for the jury, the material circumstances to be considered by the jury were these: The probability of the escape of the water, and the precautions taken by defendants to prevent such escape. None of these circumstances are contained in defendants' requests. But on the other hand, the jury are asked to consider in that connection circumstances wholly immaterial, and circumstances which would operate prejudicially in favor of defendants, viz., the lawfulness of their purpose in maintaining the race, and the care used in operating their mill. Even if defendants were entitled to have the jury charged that their obligation was only that of ordinary care—that is, the care that an ordinarily prudent person should have exercised under the circumstances —the instructions preferred are faulty, in that they under-

take to state those circumstances, and state them incorrectly, to plaintiff's prejudice. .

It is also complained that the court erred in refusing to give this request preferred by defendant:

" If it is shown in the case that the plaintiff has sustained an injury under such circumstances, in view of the instructions heretofore given you, ,that the defendants should be held liable, and that it further appears to you that such injury might have been diminished or obviated at a moderate expenditure of money or labor, or by opening an old drain or constructing a new one from the house, then it was the plaintiff's duty to have made the injury as light as possible, and in no way to aggravate it."

If it be true that, to lessen the damages, plaintiff was under an obligation to construct a drain on her own property, or do some similar affirmative act (and this has been denied. See *Pixley* v. *Clark*, 35 N. Y. 520), it is certainly true that she was bound to do no more than a person of ordinary prudence would have done. She was not held to the high obligation required in said request; that is, she was not bound to make the injury as light as possible, even though, as a person of ordinary prudence, she could have discovered no way to do so.

There is no other complaint which demands discussion.

The judgment is affirmed, with costs.

MOORE, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.