WAIDELICH v. ANDROS.

1. Negligence—Landlord and Tenant.

In an action for negligent use of water and permitting the apparatus in a toilet room to overflow, injuring the goods of a tenant occupying the lower part of the same building with defendant, who leased the second floor, evidence tending to show improper use and carelessness in depositing foreign material in the closet, *held*, to raise an issue for the jury, and *held*, that the court erred in failing to consider the duty of defendant to employ care in the use of the apparatus which had overflowed at other times within his knowledge.

2. Same—Water Supply.

While defendant was not an insurer, a high degree of care rested upon the tenants having control of the water supply in the upper part of a store building to employ active and constant precaution against the danger of an overflow.

3. Same—Evidence—Tenant's Duty as to Water Supply.

To make a *prima facie* case of defendant's negligence, it was incumbent upon plaintiff to prove an injury from an unusual occurrence of such a nature as to indicate defendant's negligence and such facts in relation to the occurrence indicating negligence as were reasonably in his power to establish.

4. Same—Res Ipsa Loquitur.

Plaintiff, whose declaration charged other negligence besides depositing foreign or bulky material in the bowl, was not deprived of his right to insist on the other negligent conduct so charged, by reason of attempting unsuccessfully to show the exact cause. Nor did he lose his right to base the claim of negligence on the presumption to which the accident gave rise of negligent conduct.

Error to Ingham; Collingwood, J. Submitted April 29, 1914. (Docket No. 178.) Decided October 2, 1914.

Case by John F. Waidelich against Alex Andros for negligently flooding plaintiff's premises. Judgment for

defendant on a directed verdict.  Plaintiff brings error.
Reversed.

*Cummins, Nichols & Rhoads,* for appellant.

*Jason E. Nichols.* for appellee.

STEERE, J.  This writ of error brings under re-
view the propriety of an order directing a verdict for
defendant in an action tried before a jury in the cir-
cuit court of Ingham county, wherein plaintiff sought
to recover for injury done to his stock of merchandise
and fixtures by water escaping from plumbing located
in defendant's apartments, on the floor above plain-
tiff's store.

Plaintiff and defendant were both tenants in a
two-story, brick building designated as 203 Washing-
ton Avenue South, in the city of Lansing.  The build-
ing was on the east side of the avenue, upon which
it had a frontage of 21 feet, extending back that width
80 feet.  It was equipped with modern conveniences,
and was comparatively new, having been built four
years previous by its owner, V. A. Lott, from whom
these parties rented the separate stories independent
of each other.  Plaintiff rented and used the lower
floor and basement for a shoe store, having a written
lease.  Defendant, who was in business elsewhere
manufacturing candy, rented the second floor by an
oral lease, and occupied the same as quarters for his
employees.  The ground entrances to the two stories
were by separate doors and entirely distinct.  Each
tenant had exclusive access to, control and use of,
his portion of the building; the entrance to the second
story being by an inclosed stairway which began at
a door upon which there was a lock, opening on the
avenue and rising along the north wall of the build-
ing to a hall on the second floor.  The rooms on that
floor opened into this hall, at the back or east end of

which was located a water-closet, partitioned off, for the exclusive use of occupants of that floor.

On the night of March 26, 1913, and near the approach of morning, a policeman traversing his beat discovered water running out upon the sidewalk from under the front door of plaintiff's store, and at once aroused defendant's employees, who were sleeping above. It was found that water was overflowing from their closet and making its way into plaintiff's store below, where it could be heard dripping. They shut off the closet, and the policeman at once notified plaintiff at his residence, whence he immediately repaired to his store, which he found flooded, its contents being soaked and seriously damaged by water dripping through the ceiling from above. He at once cared for his damaged property as well as could be done.

Negligence of defendant is variously charged in three separate counts of plaintiff's declaration. Inattention, neglect, carelessness, and disregard of duty are charged, in failing to keep the closet in repair and in a condition reasonably fit and safe for use without injury to others; and active, negligent conduct and misuse of the closet, by putting newspaper and other improper things in it, which caused it to get out of order and clogged, and to overflow, uncared for until it invaded plaintiff's store and did the damage complained of. It is also alleged that defendant's employees, who were quartered there and left in charge, were ignorant and uninstructed as to the proper care and use of said closet, and were foreigners who did not talk the English language, for which reason they could not be made to understand by those capable of instructing them, as a result of which said closet was neglected and misused.

The trial court held that there was no evidence of probative force tending to establish the use of newspaper or other obstructing matter, as charged, and

that no *prima facie* case of negligence was proven, amongst other things saying:

"Now, the people who live in the upper stories of houses and use the plumbing are not insurers of the goods of the people below. If they are negligent, if they do something or omit to do something which they ought to have done which constitutes negligence, and by their negligence the people below are injured in their person or property, then the people who are injured may recover damages from the person whose negligence injured them. * * * The evidence in this case shows—I might almost say uncontradicted evidence shows—that the water flowed into the tank because the copper float was detached from the rod, the rod dropping down in the tank and opening the valve, the water than flowed into the tank, and, the outlet being insufficient, it overflowed the tank and came onto the floor. The only evidence to the contrary was that which was put in which tended to show that there was newspapers scattered about the closet; that there was newspaper on the edge of the bowl; that there was no evidence that the tank had overflowed by marks of water on the outside of the tank.

"Now, it has been shown that the overflowing of the tank was the overflowing of the copper tank inside of the wooden tank; that it never rose to the top of the wooden tank, and therefore never came over the edge of the tank, but flowed down between the copper tank and the wooden tank somewhere onto the floor. Mr. Andros cannot be held in damages unless he was negligent. Now assuming—and the plaintiff is entitled to the benefit of presumption, assuming the disputed point that Mr. Andros was obligated to take care of this closet—that Mr. Lott had passed it over to him and he must absolutely take care of it, there must be some evidence brought forward to show where Mr. Andros was negligent. * * * Now, I am not going to ask you to guess that newspaper was used, and that that newspaper when it was used stopped that closet."

At the conclusion of the charge the jury was di-

rected to, and did, return a "verdict of no cause of action."

The question here is not whether the court's conclusions as to how the accident occurred are sustained by the evidence, but whether plaintiff's testimony, considered in its most favorable light, raised an issue of fact under the allegations of negligence in his declaration. The declaration charges more than an improper use of newspaper. The first count charges a duty to care for and keep the closet in repair, and a failure of that duty in permitting it to get out of repair, and negligently allowing it to continue so and to overflow, thereby causing the damage complained of. That it did get out of order, was broken, and overflowed and damage resulted is undisputed. Plumbers and others who examined it the next morning found the float and ball cock, which shut off the water in the tank after use of the closet, were broken off. This allowed the intake to flow continuously, and, if the pipe for carrying off this flow was clogged or not of sufficient capacity, the water which otherwise would pass harmlessly into the sewer must overflow upon the floor, as it did.

Defendant claimed and introduced testimony tending to show that the breaking of the rod which held the float in the tank frequently occurred without negligence on the part of any one, and that the overflow or discharge pipe in the closet did not have sufficient capacity to carry away the water supplied by the intake pipe when constantly flowing, that the overflow was from the tank, and not from the bowl, and urged that neither the breaking of the float arm nor the resulting overflow of the tank implied negligence on the part of those in charge of and using the closet. The court evidently adopted this theory, and charged the jury, in substance, that no inference of negligence could be drawn from the accident or the facts shown

in that connection, overlooking, we think, the duty of diligent care which applies to such conditions and certain of plaintiff's testimony in that connection.

Defendant had used this closet over three years, and had ample opportunity to learn of any inherent defects. It had overflowed before, and complaints had been made to him. Plaintiff testified that when he endeavored to caution an employee about using newspaper in it he only replied that he could not understand, and said, "Go see Andros;" that when plaintiff saw and complained to Andros on several occasions he replied, "Go see Lott; Lott no fix." This involved a preliminary issue of fact in the case, which, owing to the turn the case took, was not reached. Defendant claimed that, under his lease from Lott, the owner of the building, it was the duty of the latter to keep the plumbing in repair, and defendant was under no responsibility in that respect. Lott testified that by the terms of the lease defendant took full possession of his part of the building, equipped with new plumbing in good condition, agreeing to pay the water tax, care for the plumbing, and keep the same in good condition. The questions presented here, however, rest on the assumption that defendant had exclusive possession and control of his floor, including the water-closet in it, which it was his duty to care for and keep in repair. The duty of vigilance and degree of care imposed is relatively contingent on the nature and known risks of the agency in hand.

"There is imposed upon a person who collects water in an artificial reservoir an obligation to use care 'proportioned to the danger of injury from the escape.'" *Scott* v. *Longwell,* 139 Mich. 12 (102 N. W. 230, 5 Am. & Eng. Ann. Cas. 679).

While not insurers, a high degree of care, proportionate to the known danger, rests upon those using and in control of an artificial water supply under

pressure in the upper stories of a building. The legal maxim which requires one to so use that which is his as not to injure others is particularly pertinent here. Defendant was supplied with and using an artificial, pent-up water course, elevated and susceptible of a swift flow, which he knew, or ought to have known, would, if released and uncontrolled, in a comparatively short time inflict serious damage to the building and its contents, and particularly to that directly beneath. His duty to guard against this and take all reasonable precautions to prevent it was active and constant. Plaintiff had no access to the floor where this closet was located, and was excluded from all knowledge of how it was cared for and used, except as *res ipsa loquitur* to him by flooding his establishment. The exact knowledge of what was done and how it happened rested, in the first instance, exclusively with defendant and his agents. In such a case the probative force of environment and circumstances must not be disregarded. The evidence of defendant's negligence need not be direct and positive.

To make a *prima facie* case of the defendant's negligence it was incumbent upon plaintiff to prove an injury from an unusual occurrence, of such a nature as to indicate defendant's negligence, and such facts in respect to the occurrence indicating negligence as were reasonably in his power. The rule is thus well stated in *Rosenfield* v. *Arrol*, 44 Minn. 395 (46 N. W. 768, 20 Am. St. Rep. 584):

"Negligence, which is the want or absence of ordinary care, is the gist of the action, and the burden was upon the plaintiffs to prove facts from which it could fairly be inferred that the defendant's negligence was the proximate cause of the injury. The evidence need not be direct and positive. The fact of negligence in any given case is susceptible of proof by evidence of circumstances bearing more or less directly upon the fact. The plaintiffs were not bound to prove more than enough to raise a fair presump-

tion of negligence on the part of the defendant, and of resulting injury to themselves. Having done this, they were entitled to recover, unless the defendant produced evidence sufficient to rebut this presumption. 1 Shear. & R. Neg. §§ 57, 58, and cases cited."

Plaintiff on his part introduced testimony tending to prove that defendant was in exclusive control and possession of the second floor and the water-closet there located, which was for the exclusive use of those occupying that floor; that defendant was responsible for the proper care and use of this closet and the water fixtures, which were new and in good condition when he took possession; that defendant's employees in charge and use of the closet were apparently ignorant of how to properly use and care for the same; that it had overflowed and caused trouble before, of which they and defendant, when appealed to, seemed indifferent and denied responsibility; that on the night in question part of the mechanism which automatically shut off the water was out of order and broken, and the occupants of that floor took no precautions in regard to it, though conditions indicated the water had been flowing for hours during that night. It was shown that but two weeks before this the closet did not work properly, and a plumber named Toolan was called to attend to it. He testified that he found a rag under the flush valve, and on its removal the closet worked all right, the pipes and tank being in good condition. Asked if the overflow pipe in the tank would take care of the overflow of the tank, he answered: "Sure; that is what they are meant for." He also testified that when he examined the closet after the accident, paper on the bowl indicated that the bowl itself had been overflowing.

It is urged in behalf of defendant that plaintiff has specifically charged and tried his case on "the theory that heavy, bulky paper and other solid matter was carelessly used by defendant or his tenants in the

bowl of the closet," causing the same to clog and over-flow, which he has failed to prove; that, having pointed out what he claims was the exact cause of the accident, and unsuccessfully attempted to prove it, he is not at liberty to advance other theories or other claims of negligence.

The allegations in plaintiff's declaration are not limited to this single act of negligence. In *Cassady* v. *Railway Co.*, 184 Mass. 156 (68 N. E. 10, 63 L. R. A. 285), it is said:

"The real cause being shown, there is no occasion to inquire as to what the presumption would have been if the cause had not been shown. But if at the close of the evidence the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon a presumption, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it."

We think there was competent circumstantial evidence for the jury, even on the question of the negligent use of newspapers and other improper material. Witnesses who examined the closet the next morning testified that newspapers were lying on the floor around the bowl, that there were pieces of newspaper on the edge and sides of the bowl and there was no toilet paper, the place provided for it being empty.

We conclude this question, and others before referred to, were issues of fact for the jury to pass upon under proper instructions.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.