BUTRICK *v.* SNYDER.

1. Evidence — Trial — Conjecture—Inferences May be Drawn From Proven Facts.

While a verdict may not rest upon bare conjecture, a finding as to a particular fact may be based upon inferences fairly drawn from other facts established by proof.[1]

2. Same — Negligence—Explosives—Burden of Proof—Circumstantial Evidence.

While, in an action for personal injuries caused to a nine-year old boy by a dynamite cap found in an abandoned tool shed formerly used by defendant and its subcontractor, the burden was on plaintiff to prove that the caps were left in the shed by defendant's employees, if he was unable to furnish positive evidence of this fact, he might establish it by circumstantial proof of such nature as would create a probability sufficiently strong to lead the jury to conclude that such was the fact.[2]

3. Same — Reasonable Inferences From Proven Facts are Evidence Rather Than Presumptions.

Reasonable inferences which may be drawn from affirmative facts proven are evidence, and not presumptions.[3]

[1]Evidence, 23 C. J. §§ 1795, 1797; [2]Id., 23 C. J. § 1792; Negligence, 29 Cyc. p. 623; [3]Evidence, 23 C. J. § 1797.

4. TRIAL—EVIDENCE—CONJECTURE.

 The finding of the jury that dynamite caps were left in the shed by defendant, *held*, to rest on evidence and not conjecture merely.[4]

5. NEGLIGENCE—EXPLOSIVES—INFANTS.

 That the employees of a stone company were negligent in leaving dynamite caps in an unenclosed shed on ground where school children were allowed to play, where they were found by boys, cannot be questioned.[5]

6. SAME — NO ACTIONABLE NEGLIGENCE WHERE NO LEGAL DUTY EXISTS.

 Where there is no legal duty there can be no actionable negligence.[6]

7. SAME—NO LEGAL DUTY TO ADULT TRESPASSERS.

 In cases of adults injured while trespassing, there is no legal duty to keep the premises in a condition reasonably safe for occupancy.[7]

8. SAME — EXPLOSIVES — CHILDREN — WHETHER DANGER SHOULD HAVE BEEN ANTICIPATED QUESTION FOR JURY.

 Whether a reasonably prudent person, with knowledge of the conditions surrounding the unenclosed shed in which dynamite caps were left, and the use which school children would probably make of the unfenced and unoccupied land where the shed stood, should have anticipated the danger incident thereto, was a question for the jury.[8]

9. SAME—IF DANGER ANTICIPATED IT SHOULD HAVE BEEN SAFE-GUARDED.

 If the defendant should have anticipated the danger to school children who often used the land where the shed stood as a playground, then it owed them the duty to remove the explosive or safeguard its use in a reasonable way.[9]

10. SAME—EXPLOSIVES—INFANTS—PROXIMATE CAUSE.

 Neglect of defendant's employees to remove dynamite caps from an unenclosed shed in unfenced ground near a schoolhouse where children were allowed to play, or to properly safeguard the danger therefrom, *held*, the proximate cause of injuries to a nine-year old boy who

---

[4]Negligence, 29 Cyc. p. 623; [6]Explosives, 25 C. J. § 11; [6]Negligence, 29 Cyc. p. 419; [7]Id., 29 Cyc. p. 442; [8]Explosives, 25 C. J. §§ 11, 46; [9]Id., 25 C. J. § 11 (Anno); 14 L. R. A. (N. S.) 586; 24 L. R. A. (N. S.) 1257; 42 L. R. A. (N. S.) 840; L. R. A. 1917A, 1295; 43 A. L. R. 469; 11 R. C. L. 666 *et seq.;* 2 R. C. L. Supp. 1301.

was injured by the explosion of one while he was play-
ing with it.[10]

**11. SAME—INTERVENING CAUSE.**
 That an eleven-year old boy, who had no appreciating
 sense of the dangerous nature of dynamite caps, found the
 one which injured plaintiff, and gave it to him, *held*, not
 an intervening cause relieving defendant from liability.[11]

**12. SAME—TRIAL—QUESTION FOR JURY.**
 Whether plaintiff was aware of the danger from a dyna-
 mite cap was properly submitted to the jury, where the
 testimony of a school boy that he told plaintiff that it
 was dangerous and not to fool with it was denied by
 plaintiff.[12]

Error to Washtenaw; Sample (George W.), J. Sub-
mitted June 8, 1926. (Docket No. 13.) Decided
October 4, 1926.

Case by Harold O. Butrick, an infant, by his next
friend, against Clinton J. Snyder and others, copart-
ners as C. J. Snyder & Sons, and the Artificial Stone
Company for personal injuries. Judgment for plain-
tiff against the Artificial Stone Company. It brings
error. Affirmed.

*George E. McArthur* and *Edmund C. Shields,* for
appellant.

*John P. Kirk* and *J. N. Sampson,* for appellee.

SHARPE, J. The defendant Artificial Stone Com-
pany took a contract for building nine and one-half
miles of the highway known as "M 50" from near
Tipton in Lenawee county to the Jackson county line.
It let the job of grading to the defendant C. J. Snyder
& Sons, of Ann Arbor, who began work in the spring
of 1920, and finished a year later. Some dynamite
was used in the grading. The gravel was put on by

---

[10]Explosives, 25 C. J. § 45; [11]Id., 25 C. J. § 11; [12]Id., 25 C. J. § 46.

the stone company.    The grade settled at a place near a schoolhouse known as the Grubb school, and the stone company filled it in under special contract with the highway department.    In doing this work, and also in breaking up a large stone on the road, it used dynamite.    This work was done in August, 1921.

The schoolhouse is located on the north side of the highway.    The land across the road was at that time unoccupied, trees and underbrush having grown up thereon.    A tool shed and some other old buildings were on this land at a place about 600 feet from the school and about 150 feet back from the highway. These premises were owned by Sidney Kimball.    The pupils attending the school had been permitted by the teacher the year before to cross the road and play on this land.    One of them, Harold O. Butrick, aged 9 years, and another boy, named Arnold Rogers, aged 11 years, were given such permission on November 16, 1921.    They went into the tool shed, the front of which was open, and discovered some dynamite caps in a box on a shelf.    The boys did not know what they were.    Plaintiff broke one of them by placing it on a stone and pounding it with another.    The bell then rang, and they went to the school.    At the afternoon recess, plaintiff got some matches and laid the other cap on a stone in the schoolhouse yard and lit the end of it.    An explosion followed.    Plaintiff's eyes and hands were badly injured.    One eye was removed, and he has little sight in the other.    Some of his fingers were amputated.

In this action plaintiff, by his father as next friend, seeks recovery for the injuries sustained from both C. J. Snyder & Sons and the Artificial Stone Company. Both defendants moved for directed verdicts.    These motions were taken under advisement under the Empson act and the cause submitted to the jury, resulting in a verdict in favor of the defendant C. J. Snyder & Sons

and against the defendant Artificial Stone Company in the sum of $10,000. The stone company renewed its motion for judgment notwithstanding the verdict, and also moved for a new trial. Both motions were denied. It here reviews the judgment entered against it on the verdict by writ of error.

The defendant Snyder & Sons offered proof that no dynamite or caps were ever placed by them in the tool shed. There is also proof that shortly before the work on the highway was begun Mr. Kimball and one of his employees, Charles W. Card, removed the tools from the shed. Card testified:

"If there had been any dynamite caps in the shop I think I would have seen them if they were on that little shelf they speak of because we removed stuff from the shelf. I never knew of Mr. Kimball using dynamite."

The defendant stone company offered no proof.

1. It is insisted that—

"There is no proof in the case that the appellant, Artificial Stone Company, ever owned the caps in question, or ever placed dynamite or caps where the caps in question were found."

The dynamite caps were found by the boys in the tool shed. Some person must have put them there. The verdict is conclusive that the jury found that they were not left in the shed by either the owner of the premises or Snyder & Sons. One of defendant's employees who worked on the job of "filling in," heretofore referred to, testified that dynamite and caps were then used. It is conceded that, if they were so used, they were furnished for that purpose by the stone company. The record is silent as to the quantity furnished, whether they were all used or what was done with those not used. There is proof that while engaged in this work the stone company's employees occupied a tent which they had put up on Kimball's land near the tool shed in

which the caps were found by the boys. The plaintiff testified that he and Arnold went there to play "just a little bit after the tent was gone."

While it is true that a verdict may not rest upon bare conjecture (*Fuller* v. *Railroad Co.,* 141 Mich. 66), it is also true that a finding as to a particular fact may be based upon inferences fairly drawn from other facts established by proof. *Waidelich* v. *Andros,* 182 Mich. 374. The burden was on the plaintiff to prove that the dynamite caps were left in the tool shed by defendant's employees. If unable to furnish positive evidence of this fact, he might establish it by circumstantial proof of such a nature as would create a probability sufficiently strong to lead the jury to conclude that such was the fact. *Dunbar* v. *McGill,* 64 Mich. 676. The reasonable inferences which may be drawn from the affirmative facts proven are evidence, and not presumptions.

Applying these rules to the proofs submitted, we are of the opinion that the finding of the jury that the dynamite was left in the shed by the stone company did not rest on conjecture.

2. Negligence of Defendant. In *Powers* v. *Harlow,* 53 Mich. 507, 516 (51 Am. Rep. 154), wherein a child was injured by the explosion of a dynamite cap left in an uncovered box under a shed on a farm, it was said:

"A man of ordinary prudence if told that so dangerous an article was so carelessly stored might well have deemed the statement incredible."

That the employees of the stone company were negligent in leaving these caps where they were found by the boys cannot be questioned.

3. Duty of the Defendant Stone Company. It is insisted that these boys were trespassers when they entered the tool shed, and for that reason the stone

company owed no duty to the plaintiff to protect him from the danger incident to the use of the dynamite caps. This court is committed to the doctrine that where there is no legal duty there can be no actionable negligence. It has been applied in cases of adult persons who were trespassers, and as to whom the defendants owed no duty to keep the premises on which the injuries occurred in a condition reasonably safe for occupancy. *McCaughna* v. *Electric Co.*, 129 Mich. 407 (95 Am. St. Rep. 441); *Parshall* v. *Lapeer Gas-Electric Co.*, 228 Mich. 80.

The shed in which these caps were left was open and on an unoccupied and unfenced piece of land, containing much brush and small timber. This land was directly across the road from the schoolhouse. It was a natural playground for the children attending the school. They were not, however, permitted to go there without the consent of the teacher. The year before she had frequently accompanied them on walks over this land and around the buildings. Consent that these boys might play across the road on the day in question was given. We think the teacher, in whose charge they were, had the right to assume that those who had occupied the land had left nothing dangerous thereon which would be attractive to young children. There is proof that the owner of the premises, who lived almost directly across the road from the shed, knew that the school children used the land, to some extent at least, as a playground and made no complaint about it.

The early case of *Powers* v. *Harlow, supra,* is, we think, decisive of the question presented. The claim of liability was thus stated (page 512):

"The negligence charged against the defendant was the keeping of the exploders thus exposed and in dangerous proximity to where persons were accustomed to pass and repass, and where children like the plaintiff with childish instinct and without any knowledge of

the great peril to which they were exposed might go to the open box and take and handle them."

It was further said (page 515):

"In this case a shed in which a dangerous explosive was stored was left only partly enclosed, and its structure and location were such as naturally to invite the entrance of children either for play or for shelter from sun and rain. Children were rightfully near it; there was nothing in its appearance to warn them off; it was not fastened against their entrance; and there was nothing about it to indicate that they would do injury or be injured by going there."

The court held (page 516):

"We cannot under these circumstances say that * * * the child himself was blameworthy in acting upon the childish instincts and propensities which combined with the negligence of defendant's servant to bring the danger upon him."

This decision has been much discussed by this court. The several cases were reviewed and commented on in the somewhat late case of *Anderson* v. *Newport Mining Co.*, 202 Mich. 204. In the majority opinion, written by Mr. Justice MOORE, after referring to the holdings and discussions in other cases, it was said:

"In none of them is it suggested that *Powers* v. *Harlow* is not still the law in this State."

The proximity of the school and the probability that these lands would be used as a playground by the children were facts apparent to defendant's employees. Whether a reasonably prudent person, with a knowledge of the conditions surrounding the building and the use which the school children would probably make of this unfenced and unoccupied land, should have anticipated the danger incident to leaving these caps as they were left in the shed, was, we think, a question for the jury. If the finding be that he should, then

the defendant owed to the plaintiff and other children who might be about the shed the duty to remove this dangerous explosive or to safeguard its use in a reasonable way.    And the neglect of its employees in this respect was, we think, the proximate cause of plaintiff's injury.    *Tozer* v. *Railroad Co.,* 195 Mich. 662; *Jaworski* v. *Detroit Edison Co.,* 210 Mich. 317.

4. Intervening Cause.    It is urged that, as the boy Arnold Rogers took the cap which injured plaintiff out of the box and gave it to him, his act in doing so was an intervening cause, and relieves defendant from liability.    Arnold was but 11 years of age at the time of the accident.    The box containing the caps was lying on its side on a shelf.    Both boys saw the caps in the box.    It was beyond plaintiff's reach. Arnold reached up and took two of them out and gave one to plaintiff.    The one so given him was the one by which he was injured.    Arnold had no appreciating sense of the dangerous nature of the cap.    In our opinion, the act of Arnold in handing the cap to plaintiff should have been anticipated and was not such an intervention as to destroy the causal connection between the wrongful act of defendant's employees and the consequences which followed.    *Iamurri* v. *Saginaw City Gas Co.,* 148 Mich. 27, 34.    Cases in which this question and that last discussed will be found in 14 L. R. A. (N. S.) 586; 23 L. R. A. (N. S.) 249; 24 L. R. A. (N. S.) 1257; L. R. A. 1915E, 479; L. R. A. 1917A, 1295, 43 A. L. R.   426; and the notes thereto.

5. Was Plaintiff Aware of the Danger?    A school boy named Roberts testified that the plaintiff showed him the cap and that he told him that it was dangerous and that he should not fool with it.    This the plaintiff denied.    The issue in this respect was, we think, fairly submitted to the jury.

There are several assignments of error based on the admission of testimony, the charge of the court, and

the refusal to give some of defendant's requests.    We have examined them with care.    In our opinion they present no reversible error.

The judgment is affirmed.

SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.    BIRD, C. J., did not sit.