## FLETCHER v. FLYNN.

1. EVIDENCE—INFERENCES—VERDICTS AND FINDINGS.

   A finding by a jury as to a particular fact may be based upon inferences fairly drawn from other facts established by proofs.

2. INTOXICATING LIQUORS—CIVIL DAMAGE ACT—PROXIMATE CAUSE—EVIDENCE.

   Evidence presented in consolidated actions of widow and 4 children under the civil damage provisions of the liquor control act *held*, to present sufficient facts and permissible inferences from facts from which the jury could conclude there was a causal connection between the accident which struck down plaintiffs' decedent, then a pedestrian on a highway, and the selling or serving of alcoholic liquor by appellant to decedent some less than 3 hours theretofore while he was intoxicated, contrary to statute (CL 1948, § 436.22, as amended by PA 1958, No 152).

3. APPEAL AND ERROR—VERDICTS AND FINDINGS—PREPONDERANCE OF THE EVIDENCE.

   The Supreme Court does not reverse the determination of the jury on a question of fact that is not contrary to the preponderance of the evidence.

Appeal from Oakland; Adams (Clark J.), J. Submitted October 2, 1962. (Docket Nos. 4–8, Calendar Nos. 49,116–49,120.) Decided December 3, 1962.

Case by Ida A. Fletcher against Anise A. Flynn and Alexander Suchorski, copartners doing business as the 400 Bar, and William Papa and Americo Papa,

REFERENCES FOR POINTS IN HEADNOTES

[2] 30 Am Jur, Intoxicating Liquors § 557.
[3] 5 Am Jur 2d, Appeal and Error § 835.

copartners doing business as Bill and Rick's Market, under the civil damage provision of the liquor control laws for damages arising from the death of her husband on March 29, 1959. Four similar actions by Ida A. Fletcher as guardian of each of her 4 children. Cases consolidated for trial and on appeal. Verdicts and judgments for plaintiffs. Defendant Flynn appeals. Affirmed.

*Willans, Frisbee & Ryal (William N. Bogues,* of counsel), for plaintiffs.

*Gottlieb & Silitch (George Silitch,* of counsel), for defendant Flynn.

KAVANAGH, J.  Relying on the so-called "civil damage act" (CL 1948, § 436.22, as amended by PA 1958, No 152 [Stat Ann 1959 Cum Supp § 18.993])*,

---

* CL 1948, § 436.22, as amended by PA 1958, No 152 (Stat Ann 1959 Cum Supp § 18.993) reads in part as follows:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, and in any action provided for in this section, the plaintiff shall have the right to recover actual and exemplary damages in such sum not less than $50 in each case as the court or jury may determine: Provided, That no surety shall be liable in excess of the amount of the bond required by this act. Any action shall be instituted within 2 years after the happening of the event.  In case of the death of either party, the action or right of action given in this section shall survive to or against his or her executor or administrator, and in every such action by a husband, wife, child or parent, the general reputation of the relation of husband and wife, parent and child shall be prima facie evidence of such relation, and the amount so recovered by either husband or wife, parent or child, shall be his or her sole and separate property. Such damages together with the costs of suit shall be recovered in an action of trespass on the case before any court of competent jurisdiction and in any case where the parent shall be entitled to any such damages, either the father or mother may sue alone therefor, but recovery by 1 of such parties shall be a bar to suit brought by the other."

plaintiff Ida Fletcher, widow, sued the defendant licensees for having caused the unlawful intoxication and subsequent death of her husband, Carl Fletcher. Ida Fletcher brought 4 other suits as guardian of each of her 4 children. All were consolidated for trial.

The jury rendered a verdict against all of the defendants jointly in the sum of $4,200 in each case.

Motion for new trial was made and denied by the trial court, and only defendant Anise A. Flynn appeals.

Since the questions are identical, all 5 suits will be referred to in this appeal as 1 item.

The sole question on appeal is:

Was there any causal connection between the accident and the selling or serving of alcoholic liquor to deceased by appellant, contrary to the provisions of the statute?

At the time of the accident defendant-appellant Anise A. Flynn and defendant Alexander Suchorski were partners in a licensed class C bar, known as the "400 Bar." Defendants Papa owned and operated a store licensed to sell liquor, beer and wine to be carried out and did business as "Bill and Rick's Market."

The 400 Bar was located at 20731 John R street near 8 Mile road in the city of Hazel Park. Bill and Rick's Market was located on Dequindre street at approximately 15-1/2 Mile road in the city of Warren.

The pertinent facts are as follows:

On Sunday, March 29, 1959, early in the afternoon, Carl Fletcher, in the company of a man by the name of Armstrong and 2 women, drove to Bill and Rick's Market, where they purchased a fifth of liquor. They consumed the liquor in their automobile. They again went in the market and purchased a second fifth of liquor, and the 4 consumed this fifth. Carl

Fletcher then went into the market and obtained a pint of liquor. Armstrong testified that as Carl Fletcher went in for the pint, he was unsteady on his feet. After consuming the pint, the party drove back to the Fletcher home. Armstrong testified they didn't stay long at the Fletcher home, but proceeded in Armstrong's car to the 400 Bar, which was operated by appellant. During the trip from the Fletcher home to the 400 Bar, Fletcher produced another pint of liquor. Armstrong testified he didn't know whether this was entirely drunk by the time they came to the 400 Bar. He did testify, however, that at this point Fletcher was staggering and so were the women.

On arrival at the 400 Bar, one of the women bought a round of drinks, consisting of 4 bottles of beer, which the 4 of them consumed. Shortly thereafter Armstrong left the table and upon his return found 4 more bottles of beer and some wine on the table. Armstrong didn't know whether Fletcher finished his second bottle of beer. Armstrong and one of the women left the 400 Bar at this time. He didn't know what time it was, but guessed it was after 8 o'clock in the evening.

The next we hear about Carl Fletcher is when he arrived on foot, alone, at the home of Raymond Krause at about 8:30 p. m. The Krause home is located in Hazel Park about 3 blocks north and a half block west of the 400 Bar. Fletcher left the Krause home about 9:05 p.m., proceeding east toward John R street on foot. It was drizzling rain. Krause never saw him again. Krause testified Fletcher was very drunk when he was at his home.

No one saw Carl Fletcher after he left the Krause home until he was struck by an automobile on John R street, about 20 to 25 feet south of the intersection of Woodside, in the city of Madison Heights.

The only account of the accident was given by the driver of the car that struck Fletcher. The driver testified concerning the accident as follows: On the night of March 29, 1959, he was driving his 1957 Chevrolet car north on John R street. His wife and 3 children were with him. He was driving at 45 miles per hour. He could see as much as 3/4 of a mile or more ahead, and although it was drizzling rain he had his lights on and his windshield wipers operating, so that nothing prevented him from seeing the roadway in front of him. He testified that no cars passed his car going in either direction for approximately 2 to 4 minutes prior to the accident. He testified that when he first saw Carl Fletcher in the roadway he was right on top of him and Fletcher was coming directly at him. He swerved to the left partially on to the other half of the highway, but his right front fender struck Fletcher.

Two police officers were following the car. Officer Linville testified he saw the car swing abruptly to the left; that there were no skid marks from the car and the exact point of impact could not be determined.

The record discloses it was a cold, rainy, drizzly night and that Fletcher had on a dark or black jacket and a pair of blue jeans. It was about 10:45 p.m., when the accident occurred. Fletcher was found on the right shoulder of the road.

Fletcher was removed to a hospital in Royal Oak, where he subsequently died.

The police officers testified there was a strong odor of alcohol on Fletcher.

An autopsy was performed on the body of Carl Fletcher and a sample of blood removed and sent to the State laboratory at Lansing for examination and analysis. The State laboratory chemist and toxicologist analyzed the blood and testified it contained .15% alcohol and that such a content would put a

person under the influence of alcohol. The toxicologist also testified that in his opinion the level of alcohol in Fletcher's blood had been reduced considerably by the time the blood sample had been taken due to blood transfusions given Fletcher on admission to the hospital.

Appellant contends there is no showing of any causal connection between the accident and the selling or serving of alcoholic liquor by the appellant to the decedent. Appellant relies on the case of *Bryant* v. *Athans,* 362 Mich 17, where, in a per curiam opinion, this Court said (p 18):

"Plaintiff made a prima facie case of violation of the statute with proof that defendant's employees continued to serve intoxicating liquor to her husband after he became intoxicated. She proved that her husband left defendant's bar, intoxicated, about 10 o'clock in the evening of October 14, 1954. From this point there is a hiatus in the proof. The decedent's mangled body was found, about 9 o'clock the next morning, in the tunnel of the New York Central Railroad (extending under the Detroit river from Detroit to Windsor). The question is whether there is proof, or permissible inference from proof, upon which the jury legally could have found causal connection between the statutory violation and the decedent's mortal injuries.

"For want of proof that decedent could have traveled, while intoxicated, from defendant's bar to the place where his body was found; for want of proof that the decedent's injuries were sustained prior to wearing off of his intoxicated condition, and for want of proof from which it might fairly be inferred that foul play or other superseding cause did not intervene, we conclude that the cause of injury and death in this case was conjectural and that the trial judge was right in ordering a verdict for defendant."

The instant case differs materially from the case of *Bryant* v. *Athans, supra.* The record here discloses the drinking of unbelievably excessive amounts of liquor by Fletcher. The body was "posted," samples of blood taken and the analysis admitted in evidence. The question of its admissibility is not here on appeal. The time of death was established. The driver of the car that hit decedent testified Fletcher was coming right at him. Might not the jury, knowing how much liquor Fletcher had consumed, infer he was still intoxicated from the fact he was walking right at the car? All of these facts distinguished the instant case from that of *Bryant* v. *Athans, supra.*

In *Butrick* v. *Snyder,* 236 Mich 300, 305, this Court said:

"While it is true that a verdict may not rest upon bare conjecture (*Fuller* v. *Ann Arbor Railroad Co.,* 141 Mich 66 [18 Am Neg Rep 489]), it is also true that a finding as to a particular fact may be based upon inferences fairly drawn from other facts established by proof. *Waidelich* v. *Andros,* 182 Mich 374. The burden was on the plaintiff to prove that the dynamite caps were left in the tool shed by defendant's employees. If unable to furnish positive evidence of this fact, he might establish it by circumstantial proof of such a nature as would create a probability sufficiently strong to lead the jury to conclude that such was the fact. *Dunbar* v. *McGill,* 64 Mich 676. The reasonable inferences which may be drawn from the affirmative facts proven are evidence, and not presumptions."

See, also, the discussion in *Firemen's Insurance Co.* v. *Sterling Coal Co.,* 348 Mich 564.

An examination of the record discloses to us that there were sufficient facts and permissible inferences from facts from which the jury could conclude there was a causal connection between the accident

which struck down Carl Fletcher and the selling or serving of alcoholic liquor to Fletcher by appellant, contrary to the statute. See *Wadsworth* v. *New York Life Insurance Co.*, 349 Mich 240.

On the record before us it may not be said that the determination reached by the jury was contrary to the preponderance of the evidence. Under such circumstances, this Court does not reverse. *In re Granville Estate*, 345 Mich 495; *Meyers* v. *Fort*, 344 Mich 312.

The verdicts and judgments are affirmed. Plaintiffs shall have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.