PODBIELSKI v ARGYLE BOWL, INC

1. JURY—JUROR'S QUALIFICATIONS—PREJUDICE—MISTRIAL.

It is not error for the trial judge to refuse to grant a mistrial after one of the jurors had requested to be discharged from jury duty in a letter to the presiding judge of the circuit, where the trial judge did not receive the letter until the third day of trial and before resuming the trial satisfied himself as to the juror's qualifications by interviewing another member of the jury to determine whether or not the author of the letter had communicated his feelings to other jurors and by interviewing the author of the letter to determine if he could eliminate his personal feelings and decide the case on the facts.

2. INTOXICATING LIQUORS—DRAMSHOP ACT—CAUSAL RELATIONSHIP—SUFFICIENT FACTS.

In an action under the dramshop act, a jury may find that a causal relationship exists between a person's intoxication and a subsequent automobile accident where the record discloses that there are sufficient facts and permissible inferences from facts from which the jury could reach such a conclusion (MCLA 436.22).

3. EVIDENCE—PAST RECOLLECTION RECORDED—ADMISSIBILITY.

A doctor's notation on a person's emergency room chart, made shortly after the occurrence of an accident, indicating that the person was drunk, is admissible as past recollection recorded where it is shown that the criteria for reception of the statement as past recollection recorded were met.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 267, 269, 294 et seq.
[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 906.
  45 Am Jur 2d, Intoxicating Liquors §§ 584, 585.
[3] 29 Am Jur 2d, Evidence § 685.
[4] 31 Am Jur 2d, Expert and Opinion Evidence §§ 46, 50.
  Cross-examination of expert witnesses as to fees, compensation, and the like. 33 ALR2d 1170.
[5–7] 45 Am Jur 2d, Intoxicating Liquors § 569.
  What constitutes "injury in person or property" within civil damage or dram shop act. 6 ALR2d 798.

4. WITNESSES—CROSS-EXAMINATION—EXPERT WITNESS—PAYMENT.

It is not reversible error for the trial court to limit defendant's cross-examination of plaintiff's expert witness regarding the approximate amount of payment the expert expected for his testimony where defendant was allowed to demonstrate that the witness was being paid for his services and the cross-examination of expert witnesses is within the discretion of the trial court.

5. INTOXICATING LIQUORS—DRAMSHOP ACT—DAMAGES—LOSS OF SERVICES.

A claim of a minor child under the dramshop act for the loss of services of his mother is permissible since damages for loss of a person's services are recoverable and the right of action provided by the dramshop act is to be interpreted liberally in order to give effect to the intent of the Legislature (MCLA 436.22).

6. INTOXICATING LIQUORS—DRAMSHOP ACT—DAMAGES—FUNERAL EXPENSES.

It is error for the trial court to award a plaintiff damages under the dramshop act for debts incurred by the plaintiff for her married daughter's funeral because her daughter's husband is liable for such expenses; a cause of action to recoup any monies spent by the plaintiff for her daughter's burial properly lies against the daughter's husband (MCLA 436.22).

7. INTOXICATING LIQUORS—DRAMSHOP ACT—DAMAGES—LOSS OF AFFECTION.

Recovery of damages for the loss of a mother's love, affection, and companionship is permissible under the dramshop act (MCLA 436.22).

Appeal from Wayne, Nathan J. Kaufman, J. Submitted Division 1 May 3, 1972, at Detroit. (Docket Nos. 11025, 11026.) Decided January 16, 1973. Leave to appeal granted, 389 Mich 791.

Complaint by Juanita Podbielski, for herself and as guardian of Robert Podina, Florence Ann Podina, and Michael Sanderson, minors, against Argyle Bowl, Inc., for damages under the dramshop act. Judgment for plaintiff. Defendant appeals and

plaintiff cross-appeals. Affirmed in part and reversed in part.

*Irving Blum* and *Zemke, Lustig & Leikin, P. C.,* for plaintiff.

*Sullivan, Sullivan, Ranger & Ward,* for defendant.

Before: V. J. BRENNAN, P. J., and McGREGOR and BRONSON, JJ.

V. J. BRENNAN, P. J. These two suits were brought under the dramshop act (MCLA 436.22; MSA 18.993) to recover damages stemming from the death of Mrs. Loretta Podina. Plaintiff Juanita Podbielski is the mother of the decedent and grandmother and guardian of the minor plaintiffs (decedent's children).

At the trial, Mr. Podina, decedent's husband, testified that at about 4 p.m. on November 25, 1967, he drank one "Seven and Seven" at defendant's bar, and that he then went shopping and returned to the defendant's bowling alley about 7 p.m. During the next two hours Podina said he had several drinks of "Seven and Seven", but that he did not feel intoxicated when he left at 9 p.m. to go home and pick up his wife. Podina said that he and his wife returned to the Argyle Bowling Alley about 10 p.m. Upon their arrival, Podina, who had not eaten all day, drank another "Seven and Seven" before going out to bowl. While he was bowling he had another drink. Then he fell down and hurt his leg because he had been drinking too much. Podina stopped bowling and went back into the bar where he had "quite a few" more "Seven and Sevens", possibly five or six more, while his

wife continued bowling. When she finished bowling, she joined him in the bar where Podina continued drinking. He lost count of how much more he drank but he remembered being served "last call". When they left the bar to go home, Mrs. Podina wanted to drive but her husband said no, he was all right. They did not go anywhere else to drink. The fatal accident was reported to the police about 2:10 a.m.

Mrs. Podbielski filed these two suits seeking compensation individually for the loss of the care, comfort, and companionship of her daughter, and for the funeral bills and other expenses. She also sued as guardian of the three minor plaintiffs seeking compensation on their behalf for the loss of the care, comfort, love, affection, and companionship of their mother.

The court limited the recovery to $27,622, the estimated cost of the services lost by the children, plus the funeral expenses. The court allowed plaintiffs to argue the loss of comfort, companionship and love, but would not allow recovery on these bases.

The jury returned a verdict of $1,730.70 for plaintiff individually, and $9,032 as guardian of Robert Podina, $7,838 as guardian of Florence Podina, and $3,412 as guardian of Michael Sanderson. Defendant filed a motion for judgment *n.o.v.*, or in the alternative, for a new trial. That motion was denied and defendant appealed. Plaintiffs then filed a cross-appeal seeking a new trial on the issue of damages only.

Defendant raises a plethora of arguments on appeal; the first of these is that the trial court erred by failing to grant a mistrial after one of the jurors had, in a letter to the presiding judge of the circuit, requested to be discharged from jury duty.

The most pertinent portions of that letter are as follows:

"SUBJECT: Request to be excused from Jury Duty

"I humbly submit this request to be excused from jury duty on the following grounds:

"I am strongly opposed to being forced to serve on jury duty. I feel this decision should be one of the individual's choice based on his or her personal convictions.

"I don't feel that there is anything in life that renders me capable of determining the fate of another human being.

"The Holy Scriptures tell us, 'Judge ye not that ye be not judged with the same measures.' Also, when the hostile crowd brought the woman before Christ who had been caught in the act of adultery and demanded she be stoned to death, He wrote upon the ground these words, 'He that is without fault let him cast the first stone.' Not one stone was cast. Another question was asked of Jesus, 'How many times should we forgive our adversaries, seven times?' He replied, 'Not seven times, but seven times seventy times.'

"I don't feel that my conscious [sic] would allow me to render a verdict of guilty against another human being; especially a non-white, when I consider the many contributing factors in America's racist society. Also, I sincerely believe a great judgment [sic] day will come when the giver of all life will judge each of us according to our deeds.

\* \* \*

"Further, I am of the firm opinion that no black person should be forced to serve on any jury, unless of course the individual on trial is black, then the primary aim should be to win an acquittal. How could we possibly agree to a verdict of guilty against a black brother or sister when we consider the oppressions, the intimidations, the persecutions and disrespect that black people have undergone in America.

\* \* \*

"Finally, in view of my personal beliefs and feelings,

as set out in the foregoing statements, I would be a disservice rather than a service if I were forced to serve jury duty.

"Therefore, I beg that I be excused from jury duty now and that my name not be considered for subsequent duty in any court.

"Thank you very kindly for your consideration in this matter."

This letter was not received by the trial judge until the third day of this trial. Upon receipt of the letter, the trial judge, in chambers and on the record, showed the letter to counsel for both plaintiffs and defendant. Defendant's counsel immediately moved for a mistrial on the grounds that the attitude of this juror may have been communicated to the remainder of the jury and could possibly have resulted in incurable prejudice. This motion was denied by the trial court. Defense counsel refused to comment on the trial court's suggestion that the author of the letter be excused from the jury on the grounds that counsel did not want to prejudice his motion for a mistrial.

The court, before resuming the trial, interviewed a member of the jury to determine if there had been discussions among the jurors related to the substance of the letter. The judge's inquiries were designed to reveal whether or not the author of the letter had communicated his feelings to other jurors. The statements of the juror questioned indicated that this had not been the case.

The court then interviewed the author of the letter to determine whether he should be permitted to remain on the jury. During that interview, the following exchange took place:

*"The Court:* * * * [W]hat I want to know is whether you can eliminate your personal feelings and decide it

on the facts that come from the witness stand, and the law as I give it to you?

"*Juror No. 5:* Oh, yes. I wouldn't let my personal feelings enter in here. I would, to the best of my ability and knowledge, render a decision that I felt was fair."

Subsequently, the court resumed the trial without excluding this juror, or taking any other action in this regard.

Since there was an alternate chosen when the jury was empaneled, it may have been the wiser course to excuse this juror upon receipt of the letter. However, we feel the trial judge satisfied himself as to the juror's qualifications. We therefore conclude that defendant's first argument is without merit.

The defendant next argues that the trial court erred by failing to grant defendant's motions either for a directed verdict, or for judgment notwithstanding the verdict, on the basis that the plaintiffs had failed to establish a causal relationship between Mr. Podina's intoxication and the automobile accident. After a review of the record, we feel that the defendant's argument is without merit: to borrow language from the opinion of the Michigan Supreme Court in *Fletcher v Flynn,* 368 Mich 328, 334–335 (1962),

"An examination of the record discloses to us that there were sufficient facts and permissible inferences from facts from which the jury could conclude there was a causal connection between the accident which struck down [Loretta Podina] and the selling or serving of alcoholic liquor to [Mr. Podina] by [defendant] * * *."

The defendant argues also that the court below committed reversible error by permitting a doctor to read into the record a notation he had made on

Mr. Podina's emergency room chart. The notation was made shortly after the accident and stated that Mr. Podina was drunk. The record establishes that all the criteria for the reception of the statement into evidence on the basis of past recollection recorded were met. (See opinion of Justice T. E. BRENNAN in *Jaxon v Detroit,* 379 Mich 405 [1967].)

The defendant alleges that the trial court erred by limiting defendant's cross-examination of plaintiffs' expert witness. Defendant was attempting to elicit testimony regarding the approximate amount of payment the expert expected for his testimony. We do not feel the court committed reversible error since defendant was allowed to demonstrate that the witness was being paid for his services. The cross-examination of expert witnesses is within the discretion of the trial court *(People v MacCullough,* 281 Mich 15 [1937]) and we find no abuse of that discretion.

The defendant, in addition, argues that the plaintiffs' theory of damages, that the minor children had been deprived of the services of their mother, does not fall within the ambit of the relevant statute. The pertinent portion of the dramshop act, *supra,* provides:

"Every * * * child * * * who shall be injured in person or property, means of support or otherwise, by an intoxicated person * * * shall have a right of action in his or her name * * * ."

Defendant's allegation is totally without merit. Damages for loss of an individual's services are recoverable in this state. *Konieczka v Mt Clemens Metal Products Co,* 360 Mich 500 (1960). The dramshop act is to be interpreted liberally in order to give effect to the intent of the Legislature. *Elliot v Buchanan,* 20 Mich App 567 (1969). A fair read-

ing of the statute leads us to conclude that the claims of the minor children were permissible thereunder.

Finally, each party raises an argument regarding the trial court's ruling on damages. The defendant's argument is that the trial court erred by permitting Mrs. Podbielski to testify regarding the debts incurred by her for her daughter's funeral. It objected below on the grounds that she was not entitled to an award on that basis as a matter of law.

It is well settled that a husband is bound to pay his wife's funeral expenses. *In re La Freniere's Estate,* 323 Mich 562 (1949). If such expenses are borne by another, they may be recovered from the person liable for such expenses, in this case the husband.[1] Mrs. Podbielski's cause of action to recoup any monies spent by her for her daughter's burial properly lies against Mr. Podina.

On cross appeal, plaintiffs argue that the trial court erred by refusing to allow the minor children to recover for the loss of their mother's love, affection, and companionship. While no case on point has arisen recently, the Michigan Dram Shop Act has been held to permit damages for mental anguish *(Johnson v Grondin,* 170 Mich 447 [1912]), shame, disgrace *(Spray v Ayotte,* 161 Mich 593 [1910]), mortification *(Lucker v Liske,* 111 Mich 683 [1897]), and injured feelings *(Radley v Seider,* 99 Mich 431 [1894]). If damages are permissible under the dramshop act for the infliction of such emotional suffering, we see no reason to prevent recovery of damages for the loss of a mother's love, affection, and companionship.

We therefore remand this case to the trial court

---

[1] 7 Callaghan's Michigan Civil Jurisprudence, Corpses and Burial, § 5, p 7.

for retrial of the issue of damages alone and such other actions as are not inconsistent with this opinion.

Affirmed in part; reversed in part.

All concurred.